Harold N. **EVANSON et al., and United States of America, et al., Plaintiffs,**

v.

**UNION OIL COMPANY OF CALIFORNIA, Defendant.**

**No. 4–75–Civ. 671.**

United States District Court, D. Minnesota, Fourth Division.

Dec. 14, 1979.

Robert J. Hennessey, Larkin, Hoffman, Daly & Lindgren, Minneapolis, Minn., Charles D. Schoor, Dept. of Energy, Los Angeles, Cal., for plaintiffs.

Joe A. Walters, O'Connor & Hannan, Minneapolis, Minn., for defendant.

## MEMORANDUM ORDER

LARSON, Senior District Judge.

### A.

This action was initially filed by a group of car wash owners to recover alleged overcharges on gasoline products sold to them by the defendant Union Oil Company. The United States was later added as a plaintiff. For the last two and one-half years the parties have been conducting extensive discovery. The instant Order is prompted by one of a series of problems which have arisen in the course of discovery.

The current motion was brought by private plaintiffs for sanctions against Union Oil because it allegedly falsified answers to plaintiffs' interrogatories. The interrogatories at issue are Nos. 35, 41, 42, 43, 44, and 58 in plaintiffs' second set of interrogatories, with particular emphasis on No. 35. The history of defendant's responses to plaintiffs' attempts to obtain a straight answer to this question provides an excellent education in how to unduly prolong litigation. Plaintiffs' second set of interrogatories was initially sent to defendant on November 3, 1977. Initial answers to these questions were supplied to plaintiffs on

February 27, 1978. Union answered interrogatory No. 35 as follows:

"State in detail the manner in which Union determined its May 15, 1973 Weighted Average Price by terminal for each class of purchaser."

"ANSWER: Union objects to this Interrogatory on the grounds of irrelevance, vagueness, overbreadth, and going beyond the scope of the class, except insofar as it is limited to the calculation of the May 15, 1973 Weighted Average Price in regard to the class customers involved in this lawsuit.

"At the present time, Union is unable to answer this Interrogatory. It is continuing efforts to obtain the information concerning the subject matter of this Interrogatory."

Within a week plaintiffs notified defendant that the answers were insufficient. Defendant agreed to supplement the answers. These supplemental answers were given to plaintiffs on March 31, 1978. The supplemental response to No. 35 was:

"SUPPLEMENTAL ANSWER: Union objects to this Interrogatory on the grounds of irrelevance, vagueness, overbreadth, and going beyond the scope of the class, except insofar as it is limited to the calculation of the May 15, 1973 Weight Average Price in regard to Union's retail class of customers.

"Union's May 15, 1973 Weighted Average Prices for its retail class of purchasers for each pricing point were based upon the posted dealer tank wagon prices in effect at the respective locations on May 15, 1973. Union believed that the posted prices accurately reflected actual transactions on May 15, 1973 and that any deviations from posted prices would be *de minimus.*"

These answers were still not satisfactory to plaintiffs and the Court ordered Union, on January 19, 1979, to answer a number of interrogatories, including the ones now claimed to have been falsely answered. On March 1, 1979, Union supplied plaintiffs with the new answers. The completed answer to No. 35 now reads:

"ANSWER:
Union has previously answered that it used the posted dealer tank wagon prices for each pricing point which was in effect on May 15, 1973, as its Weighted Average Prices for its retail class of purchaser. It further explained that it believed that the posted prices accurately reflected actual transactions on May 15, 1973 and that any deviations from posted prices would be *de minimus.* Union determined its Weighted Average Prices for its jobber class of purchaser in the same manner using jobber posted prices. It further states, with respect to both its retail and jobber classes of purchasers in its Western Region, Union did prepare a computer run in October of 1973 which set forth actual transactions as reflected on delivery tickets for the various pricing points on May 15, 1973 or the first day prior thereto, if none occurred on May 15, 1973. Union's review of that computer run confirmed its belief that nearly all sales were at posted price.

In the Eastern Region, Union determined its May 15, 1973 Weighted Average Prices for the commercial class of purchaser at each pricing point by using a weighted average of actual sales as reflected by delivery tickets for May 15, 1973 or the first day prior to May 15, 1973, if no sales occurred on that date. In computing their Weighted Average Prices, the sales at the pricing points were also broken down by quantity. In the Western Region, Union determined its May 15, 1973 Weighted Average Prices for the commercial class of purchaser at each pricing point by using a weighted average of all actual sales as reflected by delivery tickets for the 45 day period from April 1 through and including May 15, 1973. In computing these Weighted Average Prices, the sales at the pricing points were also broken down by quantity as determined by mode of delivery. These May 15, 1973 Weighted Average Prices for commercial customers in the Western Region were again recalculated at the request of the FEA in the summer of 1974 using only the sales

on May 15, 1973 or the first day prior to May 15, 1973, if none occurred at the pricing point on that date. Those recomputed May 15, 1973 Weighted Average Prices also took into account quantity distinctions and were used effective October 1, 1974 through December 31, 1974.

Union is endeavoring to ascertain precisely how the May 15, 1973 Weighted Average Prices were ascertained for Wholesale Class of Purchaser and will provide the same when it becomes available.

Copies of computer reports and other relevant documents will be produced for Plaintiff's inspection concerning the foregoing."

Plaintiffs undertook an extensive investigation into the accuracy of these answers. Claiming that they had found the answers to be false, plaintiffs requested an evidentiary hearing on the possibility of sanctions. This request was granted and the hearing was held on October 3, 4, and 5, 1979. Plaintiffs then recommended certain sanctions against the defendant.

 Union, of course, contends that the answers were not false. This rests largely on the hypertechnical argument that the interrogatory merely asked if Union calculated May 1973 Weighted Average Prices, not whether it used them. The final answer to the interrogatory in one place clearly states that the prices calculated were used. Common sense would inform anyone that the question was directed toward prices used. Furthermore, the definitions in the introduction to the interrogatories define "May 15, 1973 Weighted Average Price" as:

"the May 15 *selling* price of gasoline to be calculated pursuant to the price rules . . . ." (Emphasis added).

The information developed at the evidentiary hearing overwhelmingly revealed that the interrogatory was answered falsely and that the earlier answers were undoubtedly evasive. The answer was false because Union did not use the calculated prices for its commercial class of customers. It is clear that Union made no effort to put into effect any prices it had calculated under the

regulations. Union did not attempt to determine if selling prices were related to the prices calculated under the regulations. And Union could easily have answered this interrogatory when it was first asked. The documents necessary for the answer were all available at that time. And although the Court does not believe it is necessary to show bad faith on the part of Union before applying some sanctions under Rule 37 of the Federal Rules of Civil Procedure, *see* the Advisory Committee Note to the rule, the courtroom demeanor of several of defendant's employees, as well as its course of conduct in this litigation, amply demonstrates the recalcitrant attitude Union took toward the regulations and this lawsuit. Giving a false answer is itself sufficient evidence of bad faith.

 Union also contends that no sanctions under Rule 37(b) can be levied against it because it has never been ordered to answer the interrogatories. This is plainly not true. The Court has carefully reviewed the memorandum submitted in regard to the hearing preceding the January 19, 1979, Order, as well as the hearing transcript. That review and the Court's recollection (obviously the Court is in the best position to know the intent of its Orders) show that the January 19, 1979, Order directly commanded defendant to answer these interrogatories because prior answers were incomplete. Evasive or incomplete answers justify an order under Rule 37(a). Further incomplete or false answers do not require a second order before 37(b) sanctions may be imposed. 4A Moore's Federal Practice ¶ 37.02[5] (2d ed. 1978). An implicit condition in any order to answer an interrogatory is that the answer be true, responsive and complete. A false answer is in some ways worse than no answer; it misleads and confuses the other party.

 Private plaintiffs have suggested that the proper sanction would be to find that Union's activities were "intentionally" and "willfully" in disregard of the applicable pricing regulations. In actions under the Economic Stabilization Act, 12 U.S.C. § 1904, note, when the plaintiff establishes

that he has been overcharged, the Court may in its discretion award treble damages. Economic Stabilization Act § 210(b)(1). The defendant is provided an affirmative defense to the treble damages if it can prove that the overcharge was not intentional and was the result of a bona fide error. *Id.* at § 210(b). A proviso to § 210 also requires that unless the overcharge is "willful," the plaintiff must have given the defendant a chance to refund the overcharge. The legislative history indicates that different standards were embraced by the use of "willful" in one section and "intentional" in the other. [1971] U.S.Code Cong. & Admin.News, pp. 2283, 2310. The sanction plaintiffs request would essentially determine the lawsuit against Union.

### B.

■ The Court believes that it could in its discretion sanction Union by establishing that its pricing behavior was "intentional" and "willful" within the meaning of the statute. It also might be proper under Rule 37(b)(2)(B) to preclude Union from asserting the statutory affirmative defense against treble damages that the overcharge was not intentional and resulted from a bona fide error. The Court is reluctant to go this far.

Instead Union will be sanctioned under Rule 37(b)(2)(A) by having certain facts relating to the falsified interrogatories deemed to be true, and by being required to pay plaintiffs' attorneys' fees and expenses in connection with the investigation of the interrogatory answers and evidentiary hearing, as allowed under Rule 37(b)(2).

The following facts will be deemed to be established for all purposes:

1. That defendant Union Oil Company of California knew how it was required to calculate selling prices on its gasoline products under the applicable pricing regulations.

2. That for all classes of customers defendant Union Oil Company of California did not use as the actual selling prices of its gasoline products the prices required under the applicable regulations.

3. That the responsible executives of Union Oil Company of California and therefore Union Oil Company of California itself, knew that the actual selling prices of its gasoline products were not the prices required under the applicable regulations.

These facts are connected to the purpose of the interrogatories which were falsified. That purpose was to discover information about how Union Oil determined its May 1973 prices and to unearth facts which might show that Union Oil intentionally or wilfully ignored the applicable regulations in setting its prices. The Court feels confident that it is correct in imposing these sanctions under Rule 37(b)(2) not only because of defendant's irresponsible conduct, but also because the documents and testimony produced at the evidentiary hearing so clearly support the existence of the facts which are deemed to have been established.

Plaintiffs' attorneys' fees and expenses in investigating the answers and in connection with the evidentiary hearing were directly caused by defendant's false replies. Plaintiffs' attorney submitted an affidavit detailing these services and expenses. Costs related to items which may be used in other phases of the lawsuit seem to have been reasonably apportioned. Defendant Union Oil will pay plaintiffs' attorneys' fees and expenses in the sum of $60,961.09.

In conclusion, the Court would like to express its desire and expectation that all parties to this action conduct the litigation so as to procure a just and speedy result. The Court has been extremely accommodating in the past. The events leading up to this Order now require a firmer approach.

Therefore, IT IS ORDERED:

1. That the facts listed in Part B of this memorandum will be deemed to be established for all purposes.

2. That defendant Union Oil Company of California pay the private plaintiffs' attorneys' fees and expenses in the sum of $60,961.09, to be paid to plaintiffs' attorneys within thirty days.