UNITED STATES of America and Robert R. Handley, Special Agent of the Internal Revenue Service, Petitioners-Appellees,

v.

VETCO INC., formerly Vetco Offshore Industries and Subsidiaries; Ronald G. Cullis, Financial Vice President and/or Larry R. Langdon, Secretary, Respondents-Appellants.

UNITED STATES of America and Robert R. Handley, Special Agent of the Internal Revenue Service, Petitioners-Appellees,

v.

DELOITTE HASKINS & SELLS, Certified Public Accountants, Respondent-Appellant.

Nos. 79–3756 to 79–3758, 79–3786, 80–5276 and 80–5327.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 17, 1980.

Decided May 11, 1981.

Rehearing and Rehearing En Banc Denied July 17, 1981.

As Amended Oct. 22, 1981.

Certiorari Denied Dec. 7, 1981. See 102 S.Ct. 671.

Craig B. Jorgensen, Kindel & Anderson, Alfred I. Rothman, Loeb & Loeb, Los Angeles, Cal., for respondents-appellants.

Libero Marinelli, Jr., Tax Div., Washington, D.C., argued for petitioners-appellees; M. Carr Ferguson, Asst. Atty. Gen., Washington, D.C., on brief.

Before SKOPIL and NELSON, Circuit Judges, and EAST,\* District Judge.

SKOPIL, Circuit Judge:

## INTRODUCTION

In October 1977 the Internal Revenue Service ("IRS") issued summonses to Vetco, Inc. ("Vetco"), its accountants, Deloitte Haskins & Sells ("DH&S"), and its lawyers, Kindel & Anderson. The summonses requested the books and records of Vetco and its overseas subsidiaries for 1971–1976, and tax accounting reports prepared by DH&S.

DH&S and Vetco resisted the summonses on the ground that compliance would require them to violate Swiss law. The district court enforced the summonses. When DH&S and Vetco did not comply, the district court imposed contempt sanctions. DH&S and Vetco appeal from both the enforcement and sanctions orders. We affirm.

\* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

## FACTS

Vetco is an American corporation manufacturing offshore drilling equipment. Vetco International, A.G. ("VIAG"), is a wholly-owned Swiss subsidiary of Vetco. DH&S is an American firm of certified public accountants, which was retained by Vetco to audit its accounts. Deloitte Haskins & Sells, A.G. ("DH&S Zurich") is the Swiss affiliate of DH&S.

■ In the early 1970's VIAG became a wholly-owned subsidiary of Vetco. This rendered Vetco subject to Subpart F of the Internal Revenue Code ("the Code") with respect to the reporting of VIAG's income. *See* I.R.C. §§ 951–64.[1] The IRS asserts that Vetco attempted to avoid the application of Subpart F. Instead of shipping its products to VIAG for sale, Vetco shipped them to two Swiss corporations, Wiedex, A.G. and Zanora, A.G. Those companies transferred the goods to VIAG for sale. Under this arrangement, Vetco avoided Subpart F income because VIAG's income was no longer derived from transactions with a related corporation located outside Switzerland. The IRS alleges that Wiedex and Zanora served no non-tax commercial function.

DH&S conducted a comprehensive tax survey for Vetco in 1976. It concluded that Vetco might have been required to report Subpart F income for the tax years 1971–1976. It recommended voluntary disclosure to the IRS. Kindel & Anderson provided certain information to the IRS in August and September 1976.

The information revealed led the IRS to bring its Criminal Investigation Division into the case to investigate the possibility of fraud. Relations between the IRS and Vetco deteriorated. In the absence of voluntary disclosure, the IRS issued summonses to Vetco, DH&S, and Kindel & Anderson. Pursuant to I.R.C. § 7609(b)(2), Vetco ordered DH&S and Kindel & Anderson not to comply with the summonses.

## PROCEEDINGS BELOW

■ The IRS moved to enforce the summonses. The district court ruled that the summonses had been issued for proper purposes and ordered DH&S to produce its tax accrual records. It held that Kindel & Anderson was not required to produce the DH&S tax survey.[2] In November 1979, following special briefing and hearings on the effect of Swiss law, the district court ordered Vetco and DH&S to produce their Swiss records. The court did not enter findings of fact or conclusions of law. Vetco and DH&S filed notices of appeal. The district court refused to stay its order pending appeal.

Vetco and DH&S did not comply with the district court's order. In December 1979 the IRS moved to have them held in contempt and to have sanctions imposed. The district court issued a show cause order. After hearings, in March 1980 the district court ordered Vetco and DH&S to produce the Swiss records in Los Angeles by April 11, 1980, or be fined $500 per day as a sanction. This court consolidated the appeals of Vetco and DH&S from both the enforcement and sanctions orders and granted a stay pending appeal.[3]

---

1. During the years relevant to this appeal, Subpart F provided that income of a controlled foreign corporation was to be reported on the domestic parent corporation's federal income tax return if thirty percent of the subsidiary's income was derived from transactions with related corporations located outside of the country of the subsidiary's incorporation. I.R.C. §§ 954(b)(3)(A) (1954) (amended 1975), 954(d)(1). The thirty percent minimum was reduced to ten percent by the Tax Reduction Act of 1975. I.R.C. § 954(b)(3)(A) (1975).

2. The IRS moved in the district court for reconsideration of the decision that Kindel & Anderson would not be required to produce the DH&S tax survey. The summons issued to Kindel & Anderson is therefore not before this court.

3. Because the appeals from both orders have been consolidated, there is no question that we have a final order, and that the foreign illegality defense has been properly preserved. By way of guidance, we note that the defense must be raised at the enforcement proceeding, where the summonee is entitled to "challenge the summons on any appropriate ground." *Reisman v. Caplin*, 375 U.S. 440, 449, 84 S.Ct. 508, 513–514, 11 L.Ed.2d 459 (1964). *See also United States v. Freedom Church*, 613 F.2d 316, 319

## ISSUES

1. Did the district court err in failing to enter findings of fact and conclusions of law?
2. Does the Swiss-U. S. tax treaty preclude the use of IRS summonses to obtain records of Swiss subsidiaries?
3. Does possible criminal liability in Switzerland preclude enforcement of the summonses and imposition of contempt sanctions?
4. Does the district court's production order deny DH&S due process?

## . DISCUSSION

### I. Findings of Fact and Conclusions of Law.

DH&S contends that the district court erred in failing to make findings of fact and conclusions of law supporting its order enforcing the summonses. We disagree.

██ Even if rule 52(a) of the Federal Rules of Civil Procedure requires findings and conclusions in summons enforcement and contempt proceedings, the district court could have modified that requirement by issuing an order. Fed.R.Civ.P. 81(a)(3). *See United States v. Church of Scientology of California*, 520 F.2d 818, 821 (9th Cir. 1975). We find no reason in this case for requiring the district court to carry out the formality of issuing an order. *See Brunswick Corp. v. Doff*, 638 F.2d 108, at 110–111 (9th Cir. 1981).

The function of findings and conclusions is to permit informed appellate review. 5A *Moore's Federal Practice*, ¶ 52.06[1] at 2706 (2d ed. 1980). There is virtually no factual dispute in this case. The question of whether the use of summonses is prohibited by treaty is a question of law. Swiss law is also determined as a question of law. Fed. R.Civ.P. 44.1; *Kalmich v. Bruno*, 553 F.2d 549, 552 (7th Cir.), *cert. denied*, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977).

The few factual inquiries in the case are either immaterial or adequately addressed by the district court's on-the-record statements. *Compare South-Western Publishing Co. v. Simons*, 651 F.2d 653 at 656 n.2 (9th Cir. 1981) *and Richmond Elks Hall Ass'n v. Richmond Redevelopment Agency*, 609 F.2d 383, 385–86 (9th Cir. 1979) *and Swanson v. Levy*, 509 F.2d 859, 861 (9th Cir. 1975) *with Lumbermen's Underwriting Alliance v. Can-Car, Inc.*, 645 F.2d 17, 18 (9th Cir. 1980). The district court did not err in failing to make findings of fact and conclusions of law. .

### II. Effect of the Swiss-U.S. Tax Treaty and IRS Regulations.

██ Vetco argues that the Swiss-U.S. Tax Treaty precludes the use of IRS summonses to obtain records held in Switzerland. It further contends that IRS regulations provide that treaty information-exchange provisions are the exclusive means of obtaining such records.

#### A. The Swiss-U.S. Tax Treaty.

Article XVI of the Swiss-United States Tax Treaty provides in pertinent part:

> "(1) The competent authorities of the contracting States shall exchange such information (being information available under the respective taxation laws of the contracting States) as is necessary for carrying out the provisions of the present Convention or for the prevention of fraud or the like in relation to the taxes which are the subject of the present Convention . . . . No information shall be exchanged which would disclose any trade, business, industrial or professional secret or any trade process.
>
> . . . .
>
> (3) In no case shall the provisions of this Article be construed so as to impose on either of the contracting States the obligation to carry out administrative measures at variance with the regulations

(1st Cir. 1979). The decision as to the defense is ordinarily res judicata. *See, e. g., United States v. Ofe*, 572 F.2d 656, 657 (8th Cir. 1978); *United States v. Peter*, 479 F.2d 147, 150 (6th Cir. 1973); *United States v. Secor*, 476 F.2d 766, 770 (2d Cir. 1973). *See also United States v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980).

and practice of either contracting State or which would be contrary to its sovereignty, security or public policy or to supply particulars which are not procurable under its own legislation or that of the State making application."

Convention on Double Taxation of Income, September 27, 1951, United States-Switzerland, 2 U.S.T. 1751, 1760–61, T.I.A.S. No. 2316.

I.R.C. § 7852(d) renders Code provisions inapplicable where their application "would be contrary to any treaty obligation of the United States in effect on the date of enactment of this title." *See Samann v. Commissioner*, 313 F.2d 461, 463 (4th Cir. 1963).[4]

There is nothing in the treaty barring the use of summonses by the IRS to gather information. The treaty does not state that its procedures for the exchange of information are intended to be exclusive. There is no such indication in the treaty's legislative history. A statute and a treaty are to be read to be consistent to the greatest possible extent. *United States v. Lee Yen Tai*, 185 U.S. 213, 221–22, 22 S.Ct. 629, 632–633, 46 L.Ed. 878 (1902). *See also Washington v. Washington State Commercial Passenger Fishing Vessel Assoc.*, 443 U.S. 658, 690, 99 S.Ct. 3055, 3077, 61 L.Ed.2d 823 (1979); *Kimball v. Callahan*, 590 F.2d 768, 775 (9th Cir.), *cert. denied*, 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979).

B. IRS Regulations.

IRS Regulations contemplate use of summonses in international tax investigations. I Audit, Internal Revenue Manual (CCH) ¶ 4022.(10)3(2) provides, in pertinent part:

"(c) Before any contact with a foreign organization or before any summons or presummons letter is issued to obtain information from a foreign organization which is not doing business in the United States . . . the matter must be referred to the Office of International Operations (CP:IO) for advice and assistance in accordance with IRM 42(10)(10)."

*See also* ¶ 4233.63(12); II Audit, Internal Revenue Manual (CCH) ¶ 42(10)(10).2(6); 5 Administrative, Internal Revenue Manual (CCH) ¶ 9265.1(1).

Vetco relies on II Audit, Internal Revenue Manual (CCH) ¶ 42(10)(10).1(4), which provides, in part: "The articles of the respective tax conventions determine the extent of information obtainable in treaty countries."

That section of the manual explains to IRS employees one of several means by which the Office of International Operations can obtain records from a foreign entity. Treaty procedures are the exclusive method where the treaty so provides or where the foreign entity has no American point of contact. It is not the exclusive means of obtaining information where the treaty does not so provide and where the foreign source is a subsidiary of an American corporation. There has been no violation of IRS regulations.[5]

III. Foreign Illegality and Summons Enforcement.

Appellants contend that compliance with the summonses would require them to violate Article 273 of the Swiss Penal Code. That article provides, in pertinent part:

---

**4.** The summons power may be enlarged where "to do otherwise would negate the very purpose of the Treaty." *United States v. A. L. Burbank & Co.*, 525 F.2d 9, 13 (2d Cir. 1975), *cert. denied*, 426 U.S. 934, 96 S.Ct. 2647, 49 L.Ed.2d 386 (1976). It does not appear in this case that it is necessary to limit the summons power to avoid negating the purpose of the Swiss-U.S. tax treaty. One of the purposes of that treaty is to prevent tax fraud. 2 U.S.T. at 1760. Issuance of the summons in this case will further that purpose, not negate it. *See Bacardi Corp. v. Domenech*, 311 U.S. 150, 163, 61 S.Ct. 219, 226, 85 L.Ed. 98 (1940); *Cucuzzel-*

*la v. Keliikoa*, 638 F.2d 105, at 107 n.3 (9th Cir. 1981).

**5.** Since we conclude that there was no violation of IRS regulations, we need not decide whether a violation would require that the summonses not be enforced. *See United States v. Caceres*, 440 U.S. 741, 754 & n.18, 99 S.Ct. 1465, 1473 & n.18, 59 L.Ed.2d 733 (1979); *United States v. Wilson*, 614 F.2d 1224, 1227 (9th Cir. 1980); *United States v. Equitable Trust Co.*, 611 F.2d 492, 500 (4th Cir. 1979), *cert. denied*, 445 U.S. 950, 100 S.Ct. 1599, 63 L.Ed.2d 785 (1980).

"Whoever makes available a manufacturing or business secret to a foreign governmental agency or a foreign organization or private enterprise or to an agent of any of them; shall be subject to imprisonment and in grave cases to imprisonment in a penitentiary.

The imprisonment may be combined with a fine."

StGB Art. 273. The term "business secret" has been defined to include "all facts of business life to the extent that there are interests worthy of protection in keeping them confidential." *Swiss Federal Attorney v. A.*, 98 BGE IV 209 (September 7, 1972).

Appellants contend that *Societe Internationale Pour Participations Industrielles v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) requires that the summonses not be enforced, or that contempt sanctions not be imposed, where compliance requires a violation of foreign law. We disagree.

### A. No Absolute Bar to Enforcement and Sanctions.

In *Societe Internationale*, a Swiss company sued to recover property seized by the United States pursuant to the Trading With the Enemy Act. The United States requested discovery of records of a Swiss banking firm that it alleged had conspired with the plaintiff. The Swiss government enjoined the plaintiff from producing the requested documents. The district court dismissed the action when plaintiff failed to produce. The Supreme Court reversed. The Court stated that "fear of criminal prosecution constitutes a weighty excuse for non-production, and this excuse is not weakened because the laws preventing compliance are those of a foreign sovereign." *Id.* at 211, 78 S.Ct. at 1095.

*Societe Internationale* did not erect an absolute bar to summons enforcement and contempt sanctions whenever compliance is prohibited by foreign law. The Court specifically stated that its ruling would not apply "to every situation where a party is restricted by law from producing documents over which it is otherwise shown to have control." *Id.* at 205–06, 78 S.Ct. at 1092–1093. The determination depends "upon the circumstances of a given case." *Id.* at 206, 78 S.Ct. at 1092–1093.

*Societe Internationale* held only that the district court could not dismiss a plaintiff's complaint for failure to comply with a discovery request where the plaintiff had made extensive good faith efforts to comply. The Court left the district court "wide discretion" to use other means of obtaining compliance, to award lesser sanctions against the plaintiff, and to draw inferences unfavorable to the plaintiff in the absence of complete disclosure. *Id.* at 213, 78 S.Ct. at 1096.

This case is not controlled by *Societe Internationale*. We have no finding that appellants have made good faith efforts to comply with the summonses.[6] *Compare Societe Internationale*, 357 U.S. at 201, 78 S.Ct. at 1090 (explicit finding by Special Master of good faith confirmed by district court). In *Societe Internationale*, the Swiss government enjoined the plaintiff from complying with the summons. *Id.* at 200, 78 S.Ct. at 1090. There has been no comparable action taken by the Swiss government in this case, even though the letters and affidavits filed reveal that the Swiss are not unaware of these proceedings. There was a finding in *Societe Internationale* that production would violate Swiss law. *Id.* at 204, 78 S.Ct. at 1092. We have no comparable finding in this case.[7] The Court found

---

6. By contrast, the district court stated at a hearing on April 1, 1980 that the appellants were conducting "one of the greatest delaying actions of my recent memory."

7. In the instant case, by contrast, the district court stated at a hearing on November 15, 1979:

"I have a very serious question in my mind now whether or not the records you are talking about are indeed the sort of records that the Swiss statute was designed to protect against improper revelation. And up to this point, insofar as I am concerned, we have talked a lot of generalities, and kind of records en masse with-

that in *Societe Internationale* the plaintiff's inability to produce the requested documents might "prove a serious handicap" to it in attempting to make its case. *Id.* at 212–13, 78 S.Ct. at 1096. In the instant case, Vetco will gain by its inability to produce.

The document request at issue in *Societe Internationale* was a civil discovery order. The instant case turns upon an IRS summons issued pursuant to an investigation of potentially criminal conduct. Such summonses appear to serve a more pressing national function than civil discovery. Such summonses are also more widely recognized in the international community than the broad civil discovery permitted in American courts. *See In re Grand Jury Proceedings (United States v. Field)*, 532 F.2d 404, 408 (5th Cir.), *cert. denied*, 429 U.S. 940, 97 S.Ct. 354, 50 L.Ed.2d 292 (1976) (citing authority); Note, *Foreign Non-Disclosure Laws and Domestic Discovery Orders in Antitrust Litigation*, 88 Yale L.J. 612, 627–28 (1979).

B. Balancing Competing Interests— Factors to Consider.

■ Courts must balance competing interests in determining whether foreign illegality ought to preclude enforcement of an IRS summons. The result in each case will turn on the particular circumstances. *In re Westinghouse Electric Corp. Uranium Contracts Litigation*, 563 F.2d 992, 997 (10th Cir. 1977); *In re Grand Jury Proceedings*, 532 F.2d at 407; *Trade Development Bank*

*v. Continental Insurance Co.*, 469 F.2d 35, 41 (2d Cir. 1972); *In re Uranium Antitrust Litigation*, 480 F.Supp. 1138, 1145 (N.D.Ill. 1979); Restatement (Second) of Foreign Relations Law of the United States § 39 (1965). *See also Timberlane Lumber Co. v. Bank of America*, 549 F.2d 597, 613–15 (9th Cir. 1976); *Mannington Mills, Inc. v. Congoleum Corp.*, 595 F.2d 1287, 1297 (3d Cir. 1979).[8]

The factors to be considered in this balancing process are essentially those set forth in the Restatement (Second) of Foreign Relations Law § 40. That section provides:

"Where two states have jurisdiction to prescribe and enforce rules of law and the rules they may prescribe require inconsistent conduct upon the part of a person, each state is required by international law to consider, in good faith, moderating the exercise of its enforcement jurisdiction, in the light of such factors as

(a) vital national interests of each of the states,

(b) the extent and the nature of the hardship that inconsistent enforcement actions would impose upon the person,

(c) the extent to which the required conduct is to take place in the territory of the other state,

(d) the nationality of the person, and

(e) the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state."

---

out specificity, that gives us an opportunity to test those.

. . . .

We have spent I don't know how many months now going into this question of Swiss law, and this threat of penal sanctions. Based on what I have before me at this point, I am now of the view that the threat of criminal sanctions by Switzerland is not as real as it was initially suggested to me to be."

**8.** There is a line of cases in the Second Circuit stating that "upon fundamental principles of international comity, our courts dedicated to the enforcement of our laws should not take such action as may cause a violation of the laws of a friendly neighbor or, at the least, an unnecessary circumvention of its procedures." *In re Chase Manhattan Bank*, 297 F.2d 611, 613

(2d Cir. 1962), *quoting from Ings v. Ferguson*, 282 F.2d 149, 152 (2d Cir. 1960).

These cases are distinguishable. In both *Ings*, 282 F.2d at 152–53, and *Chase Manhattan Bank*, 297 F.2d at 612–13, the summonee was not a party to the action, and there appeared to be a feasible alternative means of obtaining the documents. Moreover, the Second Circuit itself has receded from their strong language. *See Trade Development Bank*, 469 F.2d at 40–42; *United States v. First National City Bank*, 396 F.2d 897, 901–05 (2d Cir. 1968). Commentators have done likewise. *See, e. g.*, Restatement (Second) of Foreign Relations Law §§ 39–40; Note, *Discovery of Documents Abroad in U. S. Antitrust Litigation: Recent Developments in the Foreign Illegality Excuse*, 14 Va.J.Int'l L. 747, 752–56 & n.30 (1974).

*Westinghouse Electric Corp.*, 563 F.2d at 997–99; *In re Grand Jury Proceedings*, 532 F.2d at 407–09 & n.5; *United States v. First National City Bank*, 396 F.2d 897, 902–05 (2d Cir. 1968). *See also Timberlane Lumber Co.*, 549 F.2d at 614–15 & nn.31–34; *Mannington Mills*, 595 F.2d at 1297–98.

1. Vital national interests.

██ In assessing the vital national interests of each of the states, a court ought to consider the degree of difference in law or policy, and the nationality of the parties affected. *Timberlane Lumber Co.*, 549 F.2d at 614 & nn.32–33.[9]

There is a strong American interest in collecting taxes from and prosecuting tax fraud by its own nationals operating through foreign subsidiaries. Switzerland has a similar interest. *See* Convention on Double Taxation of Income, 2 U.S.T. at 1760. Yet Switzerland also has an interest in preserving the secrecy of business records. Its interest is diminished in this case, where the parties are subsidiaries of American corporations. *See Timberlane Lumber Co., supra.*

The Swiss Attorney General has distinguished between cases where there is a public interest in keeping information secret, and cases where only private interests are involved. In the latter type of case, Article 273 prohibits disclosure only if the party whose business secret is being divulged does not consent. Gerber, *Einige Probleme Des Wirtschaftlichen Nachrichtendienstes*, Zeitschrift Fur Schweiz 257 (1977). A representative of the Swiss Federal Attorney stated that the instant case "apparently does not concern a totally Swiss interest in confidentiality." Record, vol. 1, at 106. Thus, Switzerland's only interest is in protecting the privacy of its non-consenting domiciliaries. This interest is further diminished where the party seeking the records is the IRS, which is required by law to keep the information confidential. I.R.C. § 6103(a).

2. Extent of hardship.

██ We are not persuaded that Article 273 poses a great danger to the appellants. The party relying on foreign law has the burden of showing that such law bars production. *Ohio v. Arthur Andersen & Co.*, 570 F.2d 1370, 1374 (10th Cir.), *cert. denied*, 439 U.S. 832, 99 S.Ct. 114, 58 L.Ed.2d 129 (1978); *First National City Bank of New York v. Internal Revenue Service*, 271 F.2d 616, 619–20 (2d Cir. 1959), *cert. denied*, 361 U.S. 948, 80 S.Ct. 402, 4 L.Ed.2d 381 (1960).

There is no evidence that unrelated third parties with an interest in the confidentiality of the summoned records would object to production.[10] An affidavit from a representative of the Swiss Federal Attorney, states that where production is pursuant to an order of a United States Court enforcing an IRS summons there may be a defense to a charge of violating Article 273. Article 34 of the Swiss Penal Code provides a defense to criminal charges based upon duress. No case has been cited in which a person has been prosecuted for complying with a court order enforcing an IRS summons.

To the extent that some hardship is imposed on appellants, it was avoidable. I.R.C. § 964(c) requires an American corporation to keep records pertaining to its controlled foreign corporations sufficient to enable a determination as to whether Subpart F tax is due. Had Vetco kept a copy of such records at its offices in this country,

---

9. It is important to distinguish between actions brought by the government, such as this one, and private suits. In the latter situation, "there is no opportunity for the executive branch to weigh the foreign relations impact, nor any statement implicit in the filing of the suit that that consideration has been outweighed." *Timberlane Lumber Co.*, 549 F.2d at 613 (footnote omitted). *See also Arthur Andersen & Co. v. Finesilver*, 546 F.2d 338, 342 (10th Cir. 1976), *cert. denied*, 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977).

10. Vetco's Swiss counsel stated that he had contacted "the previous owner of Zanora A.G. and I was told that he would *not* consent to a full divulgement [sic] of all the transactions to the U. S. authorities." (emphasis in original). Even if this hearsay statement were admissible, it would only be legally significant if the previous owner had a personal interest in the records' confidentiality, or if Zanora were independent from VIAG. The Government has alleged that it is not independent. Vetco has not produced any evidence to the contrary.

the instant dispute would never have arisen. There would be no violation of Swiss law, and no Swiss party would have occasion to object to the disclosure.

### 3. Location, nationality, expectation of compliance.

Consideration of the other factors set forth by the Restatement does not alter our conclusion that the district court properly enforced the summonses and imposed contempt sanctions. The required conduct is to take place both in this country and in Switzerland. The records must be shipped out of Switzerland. Production to the IRS will take place in this country. DH&S Zurich and VIAG are Swiss corporations, but both are controlled subsidiaries of American firms.

### 4. Importance of the documents.

The importance of the documents to the requesting party is also a factor to be considered. Courts have refused to require production where the documents sought are largely cumulative of records already produced. *Westinghouse Electric Corp.,* 563 F.2d at 999; *Trade Development Bank,* 469 F.2d at 40–41. The IRS has shown that the documents sought are the type of records relevant to an investigation of Subpart F tax liability. Appellants have made no showing that the documents are cumulative of records already produced.

### 5. Availability of alternate means of compliance.

 We also consider whether substantially equivalent alternate means for obtaining the requested information are available. *See SEC v. Minas de Artemisa,* 150 F.2d 215, 218–19 (9th Cir. 1945); *Westinghouse Electric Corp.,* 563 F.2d at 997; *United States v. First National City Bank,* 396 F.2d at 902. Appellants contend that there are six such alternatives: obtaining consents to the disclosure, issuance of letters rogatory, use of treaty procedures, masking the names of third parties, use of an independent expert on Swiss law, and having the IRS examine the records in Switzerland. None of the proposals constitutes a substantially equivalent alternative.

Attempting to obtain consents from affected third parties is not an alternate means of production. It may limit the information obtainable by the IRS. It is not substantially equivalent because of the cost in time and money of attempting to obtain those consents.

Appellants concede that letters rogatory will not be honored in Switzerland where they seek records for litigation involving fiscal matters. The Swiss Federal Attorney has stated that tax investigations are fiscal matters, and that it would be unable to respond favorably to a letter rogatory.

In the Swiss-U.S. Tax Treaty, Switzerland reserved the right not to transmit business secrets pursuant to the treaty's information exchange provisions. There is also precedent indicating that the Swiss will not provide legal assistance in cases of tax fraud. *X & Y Bank v. The Swiss Federal Tax Administration,* 76–1 U.S.T.C. ¶ 9452 at 84,213 (Swiss Fed.Sup.Ct. May 16, 1975).

Masking the names of third parties is not a substantially equivalent alternative since the identities of the third parties is relevant to Subpart F taxation. *See* I.R.C. § 954.

Use of an independent expert on Swiss law is also not an alternative means of production. An expert could only give an opinion as to what documents could legally be produced and what documents could not. Use of an expert might not be permissible under Articles 271 and 273 of the Swiss Penal Code. Court appointment of the expert might make that person an agent of the United States government and therefore prohibited from examining the documents.

Examination in Switzerland is not a substantially equivalent alternative. The IRS is prohibited by Article 271 of the Swiss Penal Code from examining records in Switzerland. The very act of examining the records is criminal under Article 271. This contrasts with Article 273, which makes production criminal only if independent third parties object, and only if there is no defense based on duress.

We conclude that the United States has a powerful interest in obtaining the sum-

moned documents, and that Switzerland has a small interest in insisting that they not be produced. Appellants have not shown that production pursuant to a court order enforcing an IRS summons would impose a significant hardship on them.

## IV. The Enforcement Order.

### A. Due Process

■ DH&S contends that it has been denied due process because the district court's production order directed it to produce "all" records described in the summons. The show cause order had only specified the documents held in Switzerland. The IRS concedes that the district court's order encompassed only those documents located in Switzerland. We interpret the district court's order to include only those documents located in Switzerland. When so interpreted, it does not deprive DH&S due process of law.

### B. Production in Los Angeles

■ Vetco contends that the district court erred in requiring it to produce its Swiss records in Los Angeles. The terms of an enforcement order rest within the discretion of the district court. *United States v. United Mine Workers*, 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). Given the previous difficulties of securing production voluntarily, and the infeasibility of onsite inspection, the district court did not abuse its discretion by ordering Vetco to produce documents in Los Angeles.

## CONCLUSION

The district court did not err in failing to enter findings of fact and conclusions of law. The Swiss-U.S. tax treaty does not preclude use of IRS summonses to obtain records of Swiss subsidiaries of American firms. Possible criminal liability in Switzerland does not preclude enforcement and sanctions. Application of a balancing approach in this case favors enforcement and sanctions. The interest of the United States in enforcement of the summons outweighs the contrary Swiss interest, and appellants have not shown a substantial likelihood of a successful Swiss prosecution.

The orders appealed from are AFFIRMED.