In re **GRAND JURY 81–2.**

No. **M82–2 MISC.**

United States District Court,
W.D. Michigan, N.D.

June 9, 1982.

John A. Smietanka, U.S. Atty. by Stuart H. Deming, Asst. U.S. Atty., Grand Rapids, Mich., for plaintiff.

Gordon J. Quist, Miller, Johnson, Snell & Cummiskey, Grand Rapids, Mich., for Krupp Intern. Inc. and Fried Krupp G.m. b.H.

William J. Linklater, Baker & McKenzie, Chicago, Ill., for Krupp Mak Maschinenbau G.m.b.H. and Krupp Mak Diesel, Inc.

John D. Tully, Warner, Norcross & Judd, Grand Rapids, Mich., and Jeffrey Barist, White & Case, New York City, for Deutsche Bank A.G.

## OPINION

HILLMAN, District Judge.

This case is part of an ongoing investigation by a Federal Grand Jury into the activities of certain German entities within the United States. The investigation seeks information related to alleged unlawful conduct in the sale of diesel engines produced in Germany by the Krupp organization, and sold to the Upper Lakes Ship Building Company through Krupp subsidiaries in America under contracts issued by the State of Michigan. On February 18, 1982, three grand jury subpoenas were issued by the 81–2 Grand Jury sitting in the Western District of Michigan. These subpoenas called for the production of customer bank records held by the Deutsche Bank AG, a corporation organized under the laws of the Federal Republic of Germany. The subpoenas were served upon the branch of the Deutsche Bank AG in New York City on February 22, 1982, and each called for the production of specified records on March 9, 1982. Certain records have not been produced under the subpoena, and the case is now before the court on petition by the United States for an order to show cause why the Deutsche Bank AG should not be ordered to comply fully with the grand jury subpoenas. The order was entered and a hearing was held in Grand Rapids on April 19, 1982.

Deutsche Bank AG resists the subpoenas on several grounds. Initially, it argues that this court does not have *in personam* jurisdiction over the home office of the Deutsche Bank AG in Germany, where the subject documents and records are located. And since neither the New York branch nor any person in it can command production of

the documents demanded, it is argued that the government is asking this court to issue an order it could not enforce. The bank's position on the jurisdictional and enforcement issue is aptly summarized in its answering memorandum in opposition to the motion for an order compelling production:

"We have found no case that supports the proposition that this court has the power by virtue of subpoenas served on its New York branch office to compel Deutsche Bank, an alien non-party to the instant grand jury investigation, to produce records located in Germany which pertain wholly to the Bank's transactions in Germany with a German customer. With regard to the matters being investigated by the grand jury, Deutsche Bank has not had any contact with the United States. This Court should not find in the incidental presence of a Deutsche Bank branch in New York a ground for the assertion of power to compel production of documents unrelated to its New York branch."

Deutsche Bank next argues that enforcement of the subpoenas should be denied and the subpoenas quashed because they demand production of documents located in the Federal Republic of Germany where such production is prohibited by German law. It appears that upon notice of the subpoenas, the Deutsche Bank approached its customers whose records were sought by the grand jury, seeking the customers' consent to disclosure. Several of the customers did consent, but others did not. In particular, the court has been advised that on March 19, 1982, Krupp Mak Maschinenbau G.m.b.H., a German corporate subsidiary of Fried Krupp G.m.b.H., petitioned the German court in Kiel, West Germany, and obtained an *ex parte* order prohibiting the Deutsche Bank from complying with the subpoenas. The Krupp entities are among those whose bank records are sought by the grand jury. The injunction provides, in pertinent part, that:

"The respondent is prohibited ... to testify, or permit its employees to testify ... under the Subpoena of February 18, 1982 GJ 81–2, addressed to its headquar-

ters in Frankfurt/Main and its Branch in Kiel or to transmit to the Grand Jury the documents specified in the Schedule to the said subpoena ..."

Furthermore, Deutsche Bank argues that specific provisions of the German Stock Corporation Act (Sections 404 and 93) make it unlawful for any member of a corporate management board to disclose any trade or business secret of the company. The bank argues that these provisions prevent the production of documents sought by the subpoenas, and that any person who complied with the grand jury orders would subject himself to criminal and civil penalties under German law. Additionally, the bank asserts a "banking privilege developed by the courts which prohibits a German bank from disclosing any information obtained with the customer's banking relationship." The bank argues that this privilege "arises as a contractual obligation of the banking relationship" and that disclosure of such information relating to a customer without his consent would expose a German bank to a civil suit for damages.

In short, Deutsche Bank claims that the United States is asking this court to issue an order compelling lawless conduct in direct contravention of German public policy and national interest.

Finally, the bank argues that since a feasible alternative to the subpoenas is available to the grand jury, enforcement should be denied. It is suggested that the United States ask this court to issue letters rogatory, seeking the assistance of the German courts in obtaining the subpoenaed materials. The bank asserts that a German court would recognize letters rogatory for the production of the documents. Further, the bank states that:

"disclosure of a company secret is not unlawful under Section 404 and the other provisions of German statutory law ... if either the Corporation or the Board member in question is under a valid obligation to make the disclosure. Thus, if the disclosure is made pursuant to a valid court order, then the person making or

permitting the disclosure will be absolved from any liability under those provisions. Foreign court orders, whoever, have no validity within the Federal Republic of Germany, and they would not excuse a member of the managing or supervisory board of a German stock corporation from complying with Section 404 and the other statutory provisions.... In order for a request by a foreign court to have such an effect within the Federal Republic of Germany, letters rogatory would have to be referred to a court of competent jurisdiction within the Federal Republic of Germany for appropriate action by such court."

The gist of this argument is that considerations of international comity and diplomacy require that the sought after documents be pursued through "regularized intergovernmental channels of international judicial assistance which enable governmental authorities to seek evidence abroad with a minimum of infringement on national sovereignty," i.e., letters rogatory.

## I. JURISDICTION

The court is faced with the following facts. The United States government seeks, through grand jury subpoenas, records in the possession of a foreign bank. The bank maintains a branch office in the United States, but the records sought are located in Germany and the government has made no attempt to show the existence of a direct connection between the operations of the companies to whom the records pertain and the New York branch of the bank. Additionally, the German bank has been ordered by a German court not to comply with the government's request. The bank is neither a target of the grand jury investigation nor a party to the proceedings before the grand jury. The bank claims it sought the permission of its customers to disclose the records and that the customers refused to consent. Further, the bank claims that by complying with the subpoena, it would expose itself and its officers to the risk of substantial civil and criminal liability.

It is clear that if the Deutsche Bank AG were not doing business in the United States, this court would have no jurisdiction to order compliance by the bank with these subpoenas. *See generally, Blackmer v. United States,* 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375 (1932); *F.T.C. v. Compagnie de Saint-Gobain-Point-a-Mousson,* 636 F.2d 1300 (D.C.Cir.1980) [hereinafter cited as *F.T.C. v. SGPM* or *SGPM*]; Restatement (Second) of the Foreign Relations Law of the United States at §§ 7, 20, 44. However, the maintenance by Deutsche Bank AG of an active branch office in New York provides sufficient evidence that the bank "purposefully avails itself of the privilege of conducting activities within the ... (United States) ..., thus invoking the benefits and protection of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). *See also, Bersch v. Drexel Firestone, Inc.,* 519 F.2d 974 (2d Cir.1975). Therefore, since the bank has deliberately and continually operated within the jurisdiction of the United States, this court may exercise jurisdiction over the bank in order to enforce American law. Furthermore, proper service of process was accomplished at the American branch in New York. *See, F.T.C. v. SPGM, supra.*

In short, the bank's argument that the records in Germany are beyond the jurisdictional reach of these subpoenas and the orders of this court ignores the continuous and systematic presence of the bank in the United States and attempts to dodge the obligations that presence imposes upon the bank with respect to American law. It is not the agent of the bank to whom the grand jury addressed its subpoenas, but the bank itself and that bank is found operating in the United States.

## II. GERMAN LAW

Turning next to the bank's German law argument, I find the bank's position to be unsupported by modern case law. The bank argues that it is prohibited by German law from complying with the grand jury subpoenas. However, recent case law from

a wide variety of American courts reflects movement toward a general rule that a witness may not refuse to comply with a subpoena merely because compliance may subject him to sanctions in foreign countries. *See generally, Societe Internationale v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958); *United States v. Vetco, Inc.,* 644 F.2d 1324 (9th Cir.1981); *SEC v. Banca Della Svizzera Italiana,* Fed.Sec.L. Rep. (CCH) ¶ 98,346 (S.D.N.Y.1981); *Note, Ordering Production of Documents from Abroad in Violation of Foreign Law,* 31 Chi.L.Rev. 791 (1964).

I am particularly unimpressed by the bank's argument here, where the evidence establishes that the bank's efforts to secure waivers from its customers were less than thorough, and in fact, the bank appears to have actually courted the injunction against itself to protect its customer. Neither am I convinced by the bank's representations that the German government has taken a position against disclosure of the records. If indeed the German government has taken such a position, it has done so without the benefit of hearing the United States' reasons for seeking the records, and I have no doubt that being fully informed, the German officials would have given their customary respect to the legitimate efforts of the American government to enforce its criminal laws, especially when the violations in question took place on American soil.

Finally, I am satisfied that the Deutsche Bank will violate neither German law nor public policy by cooperating with the American grand jury. After all, the German court that issued the injunction did so after an ex parte hearing at which the United States was not present. Had the court heard from the United States, it would have been informed that nothing in the grand jury request would require the bank or its officers to betray its lawful obligations to either the bank's customers or the German public in general.[1]

Finally, under the principles of international law, "[a] state having jurisdiction to prescribe or enforce a rule of law is not precluded from exercising its jurisdiction solely because such exercise requires a person to engage in conduct subjecting him to liability under the law of another state having jurisdiction with respect to that conduct." Restatement (Second), Foreign Relations Law of the United States, § 39(1) (1965); *United States v. First National City Bank,* 396 F.2d 897 (2d Cir.1968). Furthermore, even if it is conceded that compliance with the subpoena would require the bank to engage in conduct inconsistent with German law, an order to comply is still appropriate in view of the balancing test set forth in the Restatement (Second), *supra* at section 40.[2]

---

**1.** The issue of the bank's exposure to civil and criminal liability under German law has been thoroughly presented to the court. Deutsche Bank's German counsel, Dr. Ulrich Bosch, informs the court by affidavits that his client cannot comply with the grand jury subpoenas without risking substantial civil and criminal reprisals. On the other hand, a highly-reputed expert and practitioner of German law, Dr. Otto Walter, states that he knows of no provision of German law, other than possibly the bank's contract with its customers, which could form the basis of liability for the bank because of its compliance with the subpoenas. I am satisfied that Dr. Walter's independent interpretations of German law are authoritative and accurate, and that an order by this court directing the bank to comply with the subpoenas would not impose upon the bank the risks of liability it seems to fear.

**2.** Section 40 reads as follows:

"§ 40. Limitations on Exercise of Enforcement Jurisdiction
Where two states have jurisdiction to prescribe and enforce rules of law and the rules they may prescribe require inconsistent conduct upon the part of a person, each state is required by international law to consider, in good faith, moderating the exercise of its enforcement jurisdiction, in the light of such factors as
(a) vital national interests of each of the states,
(b) the extent and the nature of the hardship that inconsistent enforcement actions would impose upon the person,
(c) the extent to which the required conduct is to take place in the territory of the other state,
(d) the nationality of the person, and
(e) the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state."

Among the factors listed by the Restatement are the respective national interests of each state and the extent and nature of the hardship that inconsistent enforcement actions would impose upon the bank. In applying these factors, the court is not insensitive to the German interest in bank secrecy. *See, United States v. First National City Bank, supra* at 903. However, there are significant American interests at stake in this case, namely the enforcement of American criminal law and the proper functioning of federal grand juries. In countless cases, American courts have stressed the importance to the public interest of effective law enforcement. *See, United States v. Vetco, supra* at 1331; *United States v. First National City Bank, supra* at 902–03. In *City Bank,* the American court refused to allow the German branch of an American bank to protect its German customers who were the subjects of grand jury investigations. Subpoenas seeking bank records located in Germany relating to transactions in the name of the target companies were enforced by the court despite the prospect of civil or criminal liabilities facing the bank as a result of its compliance, and despite the bank's assertion that German public policy prevented disclosure. I believe the reasoning of the *City Bank* case is applicable here, and I accept that case as a pronouncement of the legitimate considerations which must be weighed when a court deals with issues such as those raised in the instant case.

In short, I am convinced that the United States' interest in enforcing its criminal laws outweighs any countervailing interests or hardships asserted by the bank.

### III.  LETTERS ROGATORY

The bank argues that the government should use letters rogatory to obtain the documents sought by the subpoenas. Certainly this alternative is available to the United States. It seems, however, that letters rogatory are much less desirable than the subpoenas. The government has stated that time is a critical factor in the investigation and fears that letters rogatory would not produce a timely result. Indeed, former United States Attorney General Benjamin Civiletti stated at a recent meeting of the Inter-American Bar Association that "[l]etters rogatory involve unnecessary formalities, unacceptable delays, unresponsive channels of communication, and ineffective procedures for obtaining evidence in a form for timely use." The bank, on the other hand, has said it is "prepared to stipulate with the U.S. Attorney the procedures to be followed in Germany so as to avoid needless delay." However, this statement reflects a change of heart which seems less than sincere in light of the bank's apparent lack of interest in complying with the subpoenas. In light of the bank's past and present position of strong resistance to the subpoenas, the government's refusal to take comfort in the purported offer of cooperation is understandable and reasonable.

The United States has chosen subpoenas as the preferred method of obtaining the records. I am satisfied that method is both lawful and proper. Recognizing the availability of letters rogatory, nevertheless, the court will not second-guess the grand jury. The possibilities offered by letters rogatory do not render the subpoena alternative invalid or otherwise improper. Therefore, the court finds Deutsche Bank's third ground for objecting to the enforcement of the subpoenas to be without merit in this case.

### IV.  CONCLUSION

For the reasons stated above, the government's request for an order directing the Deutsche Bank AG to comply fully and completely with the grand jury subpoenas served on the New York branch of the bank on February 18, 1982, shall be granted.

### ORDER

The court having before it the motion of the United States for an order compelling the Deutsche Bank AG to comply with three subpoenas served upon the American branch of the bank in New York City on February 18, 1982, and the court having been fully informed by the parties as to the·

relevant facts and applicable law on the issues raised by the government's motion, and the court having determined and announced in an opinion filed this date that the government is entitled by law to compliance with the subpoenas,

IT IS HEREBY ORDERED that the Deutsche Bank AG shall take any and all necessary steps to comply fully and completely, within thirty (30) days of the date of this order, with the subpoenas served upon its New York branch on February 18, 1982.