800537 ONTARIO INC., an Ontario, Canada corporation d/b/a Acura–West; and Gregory Leon, Plaintiffs,

v.

AUTO ENTERPRISES, INC., a Michigan corporation; World Imports U.S.A., Inc., a Florida corporation; William Luther; Philip Trupiano; Claus Lukner; and Jake Sydorowicz, Defendants,

and

Auto Enterprises, Inc., a Michigan corporation, Counter– Plaintiff,

v.

800537 Ontario Inc., a foreign corporation d/b/a Acura–West; and Gregory Leon, Counter–Defendants.

No. 99–CV–75615–DT.

United States District Court, E.D. Michigan, Southern Division.

Oct. 30, 2000.

Sheri B. Cataldo, Sullivan, Ward, Bone, Tyler & Asher, PC, Southfield, MI, for plaintiffs.

Timothy D. Wittlinger, David M. Lawson, Clark Hill PLC, Birmingham, MI, Thomas W. Cranmer, Moro, Weiner & Kramer, Matthew F. Leitman, Bloomfield Hills, MI, for defendants.

## OPINION AND ORDER REJECTING MAGISTRATE JUDGE'S ORDER OF AUGUST 3, 2000 AND DENYING DEFENDANTS' MOTION TO COMPEL AND DENYING DEFENDANTS' REQUEST FOR SANCTIONS IN THE FORM OF DISMISSAL

DUGGAN, District Judge.

On April 20, 2000, Plaintiffs Acura–West and Gregory Leon filed a seven-count complaint against Defendants alleging various Racketeer Influenced and Corrupt Organizations Act ("RICO") and state law causes of action arising from Defendants' alleged scheme of purchasing vehicles from Plaintiffs for which no Canadian Goods and Services Taxes ("GST") were levied, and then allegedly submitting false invoices to the Canadian Government to obtain a rebate for the GSTs that were never actually levied.[1] Defendant Auto Enterprises filed a cross-complaint against Plaintiffs asserting claims for RICO violation (Count I) and misrepresentation (Count II). According to Defendant Auto Enterprises' cross-complaint, it was Plaintiffs who fraudulently obtained GST rebates from the Canadian government that were actually owing to Defendant Auto Enterprises.

■ On July 5, 2000, Defendants filed a motion to compel the production of documents previously provided to Plaintiffs' Canadian criminal defense counsel by the Canadian Crown Prosecutor, which relate to Canada's pending criminal case against Plaintiffs for tax evasion ("the Crown disclosure"). Defendants' "Request for Production of Documents" specifically sought "[a]ll documents furnished or made available to 800537 Ontario, Inc., d/b/a Acura–West, in the disclosure process in connection with the prosecution of this taxpayer by Revenue Canada, including but not limited to all forensic laboratory reports, all underlying documents examined by the Revenue Canada Forensic Laboratory, statements of witnesses, and documentary evidence." (Defs.' Mot. Compel, Ex. 1). Although most of these documents have been produced, certain documents, "including the prosecution report containing summaries of unsworn witness statements as well as forensics reports" have not been produced.[2] (Pls.' Resp. Mot. Compel ¶ 2).

On July 6, 2000, this matter was referred to Magistrate Judge Steven D. Pepe for hearing and determination pursuant to 28 U.S.C. § 636(b)(1)(A). On July 21, 2000, Plaintiffs filed a response to Defendants' motion to compel, asserting that to the extent the Crown's witness statements and forensic investigations had not been produced, Plaintiffs' failure to do so was attributable to the fact that such documents were not in the possession, custody, or control of Plaintiffs, but rather Plaintiffs' criminal defense attorney in Canada, who had undertaken an ethical and legal obligation to maintain posses-

---

1. On July 27, 2000, this Court entered an Opinion and Order dismissing Defendants World Imports U.S.A., Inc., Claus Lukner, and Jake Sydorowicz, as well as Counts I and II of the amended complaint as they pertained to the Defendants Auto Enterprises, Inc., William Luther and Philip Trupiano ("the Auto Enterprises Defendants"). Therefore, of Plaintiffs' amended claims, the only remaining claims are Plaintiffs' RICO (Count IV), breach of contract (Count V), misrepresentation (Count VI), and unjust enrichment claims against the Auto Enterprises Defendants (Count V).

2. Although the nature of the withheld documents is not clear, counsel for Plaintiffs indicated during oral argument that to her knowledge the "witness statements" consisted of the Canadian investigator's notes regarding his witness interviews, and counsel for Defendants indicated that the alleged "forensic reports" included forensic reports regarding which set of invoices, Plaintiffs or Defendants, were legitimate.

sion and control of such documents, and to not disseminate such documents or use them beyond what was strictly necessary for the defense of the criminal proceedings against Plaintiffs in Canada. On July 27, 2000, Defendants filed a reply, asserting that there was no threat of public dissemination in this case, and that permitting discovery of the requested materials was not contrary to Canadian or Federal law.

On August 2, 2000, Magistrate Judge Pepe held a hearing regarding this matter, and on August 3, 2000, issued an Order directing Plaintiffs to obtain a copy of "the documents identified as 'Crown disclosure' that were received from the Canadian Crown Prosecutor" from their Canadian criminal defense attorney Mr. D. Fletcher Dawson, and to provide such documents, under seal, to counsel for Plaintiffs in this case, as well as counsel for Defendants, by August 18, 2000. According to Magistrate Judge Pepe, Plaintiffs had failed to establish any legal privilege or other bar to production of the documents. Magistrate Judge Pepe also found that the documents were "effectively in the custody and control of the Plaintiffs," and that "most of the policy considerations for not providing these materials to counsel in a civil case—a case that was brought by the [P]laintiffs to whom the documents were disclosed—either do not apply in this context or can be accommodated sufficiently by a Protective Order." (8/3/00 Order at 2).

This matter is now before the Court on Plaintiffs' objections to Magistrate Judge Pepe's August 3, 2000 Order to Produce and Protective Order. Accordingly, this Court must consider such objections and modify or set aside any portion of the Order found to be clearly erroneous or contrary to law. FED. R. CIV. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). A hearing regarding Plaintiffs' objections was held on October 19, 2000.

Plaintiffs essentially assert that it was error for Magistrate Judge Pepe to find that the Crown disclosure documents were effectively in the control and custody of Plaintiffs despite the fact that they are incapable of producing such documents. (Obj. ¶ 16). According to Plaintiffs, such documents are in the possession of their Canadian criminal

defense attorney, Mr. Dawson, who refuses, per directions from the Canadian prosecutor, to turn such documents over to Plaintiffs or Plaintiffs' counsel, despite the fact that Magistrate Judge Pepe has ordered the production of such documents. (Obj. ¶¶ 4–11).

Plaintiffs have provided the Court with the affidavit of Mr. Dawson, their Canadian criminal defense attorney, in which he explains that he has always considered it his ethical duty to maintain possession and control of such Crown disclosures, and to not disseminate or make use of such disclosures beyond what is strictly necessary for the defense of the Canadian criminal proceedings. (7/17/00 Dawson Aff. ¶ 3). In response to Defendants' request for such documents, and consistent with his perceived obligations, Mr. Dawson contacted Mr. Seabrook, the Canadian prosecutor, to inquire as to whether he could provide such documents to Defendants, or, for that matter, Plaintiffs. (*Id.*).

Mr. Seabrook responded by letter dated March 23, 2000, stating:

> We have previously confirmed that Revenue Canada has no objection to the production by you of copies of records from that disclosure which were seized from your clients as your clients are entitled to copies of these documents in any event. However, the disclosure in the criminal proceedings is provided to you on the understanding that it is not to be released to third parties. Accordingly, we are not consenting to disclosure by you of any of the other documents such as witness statements and the results of forensic investigation by Revenue Canada.

(Obj., Ex. C). Based upon Mr. Seabrook's response, Mr. Dawson "believes it to be [his] ethical obligation to refrain from producing any portions of the Crown disclosure, other than those which [he has] been permitted to release by Crown counsel." (7/17/00 Dawson Aff. ¶ 3). Furthermore, according to Mr. Dawson, he "routinely refuse[s] to provide clients with copies of disclosure material when they request it," and that if he is discharged as counsel in a case, he "also decline[s] to provide the disclosure to the accused." (*Id.* ¶ 12). Instead, he "either return[s] it to the Crown or forward[s] it

directly to counsel assuming conduct of the defense." (*Id.*).

Upon being provided a copy of Magistrate Judge Pepe's August 3, 2000 Order directing the production of such documents, Mr. Dawson again contacted Mr. Seabrook on August 9, 2000, regarding disclosure of such documents. (Obj., Ex. 3). On the same day, Mr. Seabrook responded, stating "[o]ur position with respect to the disclosure has not changed from that set out in my letter to you dated March 23, 2000." (*Id.*, Ex. 4). Accordingly, Mr. Dawson still refuses to produce such documents to Plaintiffs, counsel for Plaintiffs, or counsel for Defendants. Based upon the fact that Mr. Dawson refuses to produce such documents, Plaintiffs contend that Magistrate Judge Pepe erred in finding that Plaintiffs are effectively in custody and control of the documents.

In response, Defendants assert that there is no legal basis for Mr. Dawson's refusal to produce such documents under either United States or Canadian law. Defendants rest their contention upon the fact that the Canadian Constitution grants the accused in a criminal case the right to full and complete discovery of the Crown's case. Therefore, according to Defendants, "[t]o the extent that material subject to disclosure under the Canadian Constitution are not in Plaintiff's physical possession, the Plaintiff may be ordered to request those documents to which it is entitled and to produce them, law or agreements regarding nondisclosure notwithstanding." (*Id.* at 10).

This Court disagrees with Magistrate Judge Pepe's conclusion that the materials are "effectively in the custody and control of the Plaintiffs." The materials that are the subject of this motion are not materials belonging to Plaintiffs. They are "materials" belonging to the Crown, which the Crown was duty bound to disclose to the attorney defending Plaintiff in the criminal proceedings in Canada. Furthermore, it is undisput-

ed that Mr. Dawson refuses to produce the documents. As stated by Plaintiffs:

> The bottom line is that Plaintiffs' Canadian attorney, who is not within the personal jurisdiction of this Court, will not relinquish control over the requested documents at this time without the consent of the Canadian Crown Prosecutor. This consent was requested by Plaintiffs' Canadian attorney and denied twice. The Plaintiffs have demanded the documents and have been refused.

(Pls.' Reply at 7). Plain and simple, Plaintiffs are unable to comply with Defendants' request for production of these documents and therefore, in this Court's opinion, Magistrate Judge Pepe's Order compelling the production of these documents is clearly erroneous.

At the hearing on Plaintiffs' objections on October 19, 2000, counsel for Defendants relied on a number of cases that he believes support Magistrate Judge Pepe's Order requiring Plaintiffs to produce the subject materials, and that a failure on the part of Plaintiffs to do so should result in a dismissal of this action.[3] However, none of the cases cited by counsel for Defendant during oral argument leads this Court to such a conclusion.

Of the four cases cited by counsel for Defendant during oral argument, only one case even discusses whether dismissal is an appropriate sanction when a party fails to comply with a discovery order: *Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958).[4] Furthermore, in *Societe Internationale*, the Supreme Court held that it was improper for the district court to order dismissal of the petitioner's cause of action where its failure to comply with a production order was due to an inability "fostered neither by its own conduct nor by circumstances within its control." *Id.* at 211, 78 S.Ct. at 1095. According to the Supreme Court, "Rule 37 should not be con-

---

**3.** The Court shall interpret counsel for Defendants' argument as a request for sanctions in the form of dismissal pursuant to Rule 37(b)(2) based upon Plaintiffs' conceded inability to comply with Magistrate Judge Pepe's Order.

**4.** Counsel for Defendants also cited *In re Ruppert*, 309 F.2d 97 (6th Cir.1962); *Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108 (D.Colo.1992); *In re Grand Jury 81–2*, 550 F.Supp. 24 (W.D.Mich.1982).

strued to authorize dismissal of [a] complaint because of [a] petitioner's noncompliance with a pretrial production order when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner." *Id.* at 212, 78 S.Ct. at 1096.

█ Consistent with the Supreme Court's mandate in *Societe Internationale,* the Sixth Circuit has stated that in determining whether dismissal is an appropriate sanction under Rule 37(b)(2), this Court must consider four factors: (1) whether the party's failure to cooperate was due to willfulness, bad faith or fault; (2) whether the adversary was prejudiced by the party's failure to cooperate in discovery; (3) whether the party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered. *Bass v. Jostens, Inc.,* 71 F.3d 237, 241 (6th Cir.1995).

█ The Court is satisfied that Plaintiffs have attempted to comply with the terms of Magistrate Judge Pepe's Order and have been unable to do so through no fault of their own. Plaintiffs are clearly not in physical custody of the requested documents. Furthermore, Mr. Dawson has specifically refused to turn a copy of such documents over to Plaintiffs. There is absolutely no evidence that Plaintiffs' failure, or inability, to comply with Magistrate Judge Pepe's Order is due to any willfulness, bad faith, or fault on their part. This is not a case where the plaintiff has relinquished actual physical possession of the documents to his attorney in a direct attempt to circumnavigate this Court's discovery rules. Plaintiffs themselves have never had actual physical possession of the documents at issue in this case.

Furthermore, the Court is not satisfied that Defendants will be prejudiced by Plaintiffs' inability to produce the Crown disclosure. Defendants have failed to persuade this Court that they are unable to procure their own forensic reports. In fact, this Court is not convinced that Defendants are entitled to forensic reports prepared by an

independent third party who is in no way connected to this case.[5] With respect to the witness statements, as previously stated, such documents, which were obtained by and belong to the Crown, were simply furnished to Plaintiffs' criminal defense attorney for review. To the extent that Plaintiffs or Plaintiffs' attorney in this civil action has information relating to the identity of witnesses having information relevant to this proceeding, Defendants can obtain that information by simply serving Plaintiffs with an appropriate interrogatory.

In this Court's opinion, Magistrate Judge Pepe's Order finding that the Crown disclosure is effectively in the custody and control of Plaintiffs is clearly erroneous. Furthermore, even if such materials were deemed to be "effectively" in the custody or control of Plaintiffs, this Court is satisfied that Plaintiffs do not have any ability to produce such documents. Therefore,

**IT IS ORDERED** that Defendants' motion to compel the production of documents is **DENIED,** and

**IT IS FURTHER ORDERED** that Defendants' request for dismissal pursuant to Rule 37(b)(2) based upon Plaintiffs' "failure" to comply with Magistrate Judge Pepe's Order is **DENIED.**

---

5. This Court seriously questions whether Defendants have any right to a forensic report prepared by an expert retained on behalf of the

government in connection with its investigation and/or prosecution of a criminal case.