**In re OIL SPILL BY the AMOCO CADIZ OFF the COAST OF FRANCE ON MARCH 16, 1978.**

**MDL No. 376.**

United States District Court,
N. D. Illinois, E. D.

March 15, 1982.

Frank Cicero, Kirkland & Ellis, Chicago, Ill., for Amoco Parties.

Raymond J. Smith, Burke & Smith, Chicago, Ill., for Captain Pasquale Bardari.

Warren Ingersoll, Lord, Bissell & Brook, Chicago, Ill., T. Barry Kingham, Curtis, Mallet-Prevost, Colt & Mosle, and Bigham, Englar, Jones & Houston, New York City, for Cotes du Nord.

Donald M. Haskell, Warren J. Marwedel, Haskell & Perrin, Chicago, Ill., and Hill,

Betts & Nash, New York City, for Republic of France.

Michael A. Snyder, Daniel K. Schlorf, Bradley, McMurray, Black & Snyder, Chicago, Ill., for Bugsier Reederi und Bergungs, A. G.

Daniel J. Pope, Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., for American Bureau of Shipping.

## MEMORANDUM OPINION AND ORDER

McGARR, Chief Judge.

In this motion, the Amoco parties ("Amoco") seek sanctions and a preclusion order against the Republic of France ("France") for its refusal to produce the testimony and documents gathered by the inquiry commissions of the French National Assembly and Senate. This motion is the culmination of a long and persistent dispute. The French inquiry commissions were created in 1978, shortly after the Amoco Cadiz casualty, to investigate the grounding of the Cadiz and subsequent cleanup operations. Several witnesses, including the captains of the Amoco Cadiz and the tug Pacific, testified before these commissions.

Amoco contends that these commissions made crucial factual findings indicting the French government for failing to prevent the grounding of the Amoco Cadiz and for failing to prevent or contain the resulting oil spill. Memorandum of the Amoco Parties in Support of Their Amended Motion for Sanctions and a Preclusion Order Against the Republic of France ("Amoco Mem.") at 2. They maintain that these findings directly relate to Amoco's counterclaims and third party claims against France. Id.

The findings themselves are not binding on this court or, under ordinary circumstances, even admissible. But the testimony and documents relied upon may well be admissible, and, in the face of the refusal of France to comply with the court's production order, admission into evidence of the findings is one of the sanctions available to the court.

Amoco sought production of the testimony and documents gathered by these commissions. France refused to comply with the discovery requests on the grounds that a French non-disclosure statute prohibited disclosure and that violation of the statute could lead to criminal penalties.

On April 1, 1980, this court issued an order compelling France to produce the documents and testimony. *In re Oil Spill by the "Amoco Cadiz" Off the Coast of France on March 16, 1978* (MDL 376 Apr. 1, 1980) (hereinafter referred to as "the April 1 decision"). As the predicate for that order, the court determined that: 1) Amoco had amply demonstrated its need for the documents and testimony, 2) the documents and testimony requested were in the French archives and France, as a party to this litigation, had sufficient control to order the release of the documents and testimony pursuant to a discovery request, and although this court was reluctant to compel production when such an order would violate foreign law, the presence of the French non-disclosure statute did not override Amoco's need for the documents and testimony nor its right to their discovery. *Id.*

The court addressed this same issue on three subsequent occasions. On April 21, 1980, France sought reconsideration of the April 1, 1980 order. The request was denied and the original order affirmed. The order to compel was reiterated on May 6, 1980 and again on September 15, 1980. *See* Amoco Mem. at 4–5. To date, France has not produced the testimony nor the documents as ordered by this court, and has finally stated on the record its refusal to do so.

At issue presently is Amoco's renewed motion[1] for sanctions against France for its

---

1. Amoco filed its original motion for sanctions against France on May 30, 1980. The court entered and continued the motion at Amoco's request pending the completion of the depositions of French government officials. Since discovery is now closed for all but expert witnesses, it may be assumed that the depositions of French government officials have been completed.

failure to comply with discovery, Rule 37(b), Fed.R.Civ.P. Amoco requests that judgment be entered in its favor on its counterclaims and third-party claims against France and that France's claims against Amoco be dismissed with prejudice. In the alternative, Amoco requests that the court enter certain findings from the reports of the inquiry commissions as conclusive findings of fact, and preclude France from offering any evidence to contravene these findings. Amoco also seeks an order requiring France to pay reasonable expenses, including attorneys' fees, incurred by Amoco in litigating the issue of France's refusal to produce the documents and testimony of the inquiry commissions and in seeking to corroborate these findings by other means of discovery.

## I.

The first sanction requested by Amoco is that France's claim against it be dismissed and that judgment be entered in Amoco's favor on its counterclaims and third-party claims against France. Amoco asserts that these sanctions are justified because France intentionally and willfully violated the court's orders to produce the files of the inquiry commissions. Amoco supports this claim with several references to statements made by counsel for France indicating France's refusal to comply with the court's orders. See, e.g., Amoco Mem. at 9. Amoco maintains further that France's reliance on its non-disclosure law to justify its failure to produce the files of the inquiry commissions does not alter the willful or intentional nature of France's conduct. See Smith v. Schlesinger, 513 F.2d 462 (D.C.Cir. 1975).

Where a party has intentionally or willfully refused to comply with a court's order directing discovery, the court is free to employ the sanctions of dismissal or entry of judgment. See National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); Societe Internationale v. Rogers, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958); Margoles v. Johns, 587 F.2d 885 (7th Cir. 1978); In re Uranium Antitrust Litigation, 480 F.Supp. 1138 (N.D.Ill.1979).

The seminal case on this subject, Societe Internationale v. Rogers, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958), involved the trial court's dismissal of the action because the Swiss corporate plaintiff had failed to comply with the court's order to produce documents. The plaintiff had attempted to comply with the order but was unable to do so because, under Swiss law, the plaintiff would be subject to criminal liability if it made the disclosure. The Supreme Court, in reversing the lower court, refused to construe Rule 37 "to authorize dismissal ... when it has been established that the failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of the petitioner." Id. at 212, 78 S.Ct. at 1095. The Court noted that the willfulness of the party does not affect the fact of noncompliance, but that the reasons for noncompliance are relevant in determining the sanctions to be imposed. Id. at 208, 78 S.Ct. at 1093. According to the Supreme Court, "a failure to respond to a court order to produce is a noncompliance ... but ... the sanction of dismissal cannot be imposed if the failure was due to inability to comply." Id. See 8 Wright & Miller, Fed.Prac. & Proc: § 2283, at 762 (1970).

The Supreme Court decision in National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) reaffirmed the requirement that there must be a showing of willfulness or bad faith before a court can invoke the "extreme sanction" of dismissal. Id. at 643, 96 S.Ct. at 2781. The same showing is necessary before entering judgment against the erring party.

It is possible to reason that, since the law which bars France's compliance is a law enacted by France (and could be repealed by France), therefore, France cannot hide behind its own legislative conduct as a justification for its inability to comply with the court's order. But this reasoning is an oversimplification of the matter. France is not a person, but a tripartite government. The Executive Branch, which is pursuing

this litigation, can neither ignore legislation nor change it. It cannot be charged, therefore, with the degree of willfullness necessary to support the sanction of dismissal or adverse judgment.

Amoco cites *Ghana Supply Com'n v. New England Power Co.*, 83 F.R.D. 586 (D.Mass. 1979) as persuasive authority. *Ghana Supply* involved a Ghanian corporation which the court found to be an agent of the Ghanian government, which, in turn, was subject to a non-disclosure statute. *Id.* at 595. The court held that the plaintiff, if it chose to continue its suit, would have to make an exception to its non-disclosure order or face sanctions for failure to comply with discovery. *Id.* at 594–95.

*Ghana Supply* is distinguishable from the instant cause in at least two respects. There the court found that the plaintiff probably possessed the authority to make an exception to the nondisclosure law. *Id.* More importantly, the issue before the court in *Ghana Supply* involved *whether* to issue an order to compel the production of documents. The issue was not, as it is here, what form of sanctions should be imposed.

In opposition to Amoco's request for sanctions, France offers several arguments to support its claim that its non-compliance with the court's orders was not willful or in bad faith. Most of these, such as the assertion of the doctrine of separation of powers as it prevails under French law, have been considered previously by the court. *See* April 1 decision, *supra* at 4–7.

Moreover, this court assumes that, as agents of the court, the parties to this litigation, counsel for France in particular, have been and are acting in good faith. The court assumes, therefore, that if an exception to the non-disclosure statute were available, it would have been availed of in this instance.

■ On the one hand, the persistent refusal of France as a party to obey an order of the court is most serious and disturbing. On the other hand, we are aware of the fact that the French nondisclosure statute was enacted for reasons other than to prevent disclosure of the inquiry commissions' files in the course of this litigation. For this reason, the court cannot conclude that France's refusal to comply with our orders could be characterized as willful or in bad faith. In accordance with prevailing case law, we will not impose the extreme sanction of dismissal or entry of judgment. Amoco's request for sanctions in the form of dismissal of France's claims against Amoco and for entry of judgment in Amoco's favor on its counterclaims and third-party claims against France is denied.

We note, however, that the Supreme Court has indicated that, aside from these particular sanctions, the district court is free to impose other, less drastic sanctions for failure to comply with court-ordered discovery. *Societe Internationale v. Rogers*, 357 U.S. 197, 213, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958), and we turn to a consideration of alternatives.

## II.

■ Amoco, in the alternative, seeks entry of certain findings of fact based upon the commissions' reports. It seeks also that these findings be deemed conclusive and that France be barred from introducing contrary evidence at trial. In support of its request, Amoco refers to several courts which, in choosing not to dismiss or default the erring party, have entered conclusive findings of fact or preclusion orders. *See, e.g., In re Attorney General of the United States*, 596 F.2d 58 (2d Cir.), *cert. denied sub. nom. Socialist Workers Party v. Attorney General of the United States*, 444 U.S. 903, 100 S.Ct. 217, 62 L.Ed.2d 141 (1979); *Smith v. Schlesinger*, 513 F.2d 462 (D.C.Cir. 1975).

In accordance with this alternative request for sanctions, Amoco has attached as an appendix the translation of various findings made by the French National Assembly and Senate Inquiry Commissions that it seeks to have admitted as conclusive findings of fact. Amoco Mem. at App. A. Amoco contends that entry of these facts as conclusive and the issuance of a preclusion order "would be the only solution which

would put the Amoco parties in the approximate position they would have been had France complied with the Court's orders." *Id.* at 18.

France objects not only to the proposed sanction but also the specific statements that Amoco seeks to have treated as conclusive findings. According to France, the statements are "either conclusions or conclusory allegations which are distorted, taken out of context, incomprehensible or not supported by deposition or documentary evidence generated in this litigation." Memorandum of the Republic of France in Opposition to Amoco Parties' Motion for Sanctions and a Preclusion Order at 25. France offers several examples to support its contention.

The court is not able, at this stage in the litigation, to sift and weigh the fairness of these extracts from the findings of the commissions before the receipt of any evidence. To do so would require an examination of the entire findings which, in a bench trial, is tantamount to the receipt of them in evidence.

Under Rule 37, this court may fashion sanctions that it deems reasonably appropriate under the circumstances. The first of these is that the court will admit into evidence at the trial the findings of French commissions or inquiries whose exhibits or proceedings have been withheld from discovery. These findings will not be regarded as conclusive findings of fact, but will be regarded by the court as part of and in the light of all the evidence introduced at the trial. Further, the court will be able to issue appropriate rulings at trial in those instances where it appears that parties other than France have been disadvantaged by the withholding of discovery which is the subject of the controversy treated herein.

### III.

█ Finally, Amoco seeks as a sanction fees and expenses, including attorneys' fees which it has incurred in the course of litigating the issue of the production of the inquiry commissions' files and in seeking to corroborate the commissions' findings.

Pursuant to Rule 37(b)(2)(E), the court "shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorneys' fees, caused by the failure, unless the ... failure was substantially justified...." In accordance with this provision, the court hereby assesses as a sanction against France the reasonable expenses, including attorneys' fees, that Amoco has incurred in litigating the issue of France's refusal to produce the court-ordered materials. Amoco is directed to file a statement setting forth the details of the time and expense incurred in this regard.

In sum, this court, regarding Amoco's motion for discovery sanctions against France, concludes as follows:

1. Amoco's request for entry of judgments in its favor on its counterclaims and third-party claims against France and its request for dismissal of France's claims against Amoco is hereby denied.

2. Amoco's request for admission of certain findings as conclusive and for a preclusion order against France is also denied. These findings, however, will be admitted into evidence. The court will rule on subsequent requests for admission or exclusions at trial. In no event will France be allowed to introduce into evidence any documents or testimony withheld from discovery.

3. Furthermore, the reasonable fees and expenses, including attorneys' fees, that Amoco incurred while litigating the issue of France's refusal to produce the files of the inquiry commissions shall be assessed against France.