## REMINGTON PRODUCTS, INC., Plaintiff,

v.

## NORTH AMERICAN PHILIPS CORPORATION, N.V. Philips' Gloeilampenfabrieken, and Schick Incorporated, Defendants.

### Civ. A. No. B–82–56 (RCZ).

United States District Court,
D. Connecticut.

Aug. 22, 1985.

Thomas P. Meehan, David Barmak, Randell C. Ogg, Sherman, Meehan & Curtin, Washington, D.C., Dennis N. Garvey, Garvey & Walsh, P.C., New Haven, Conn., for plaintiff.

William R. Willis, Garrard R. Beeney, Sullivan & Cromwell, New York City, for defendant N.V. Philips Gloeilampenfabrieken.

John S. Magney, Alan R. Palmiter, Linda J. Soldo, John M. Bredehoft, Cleary, Gottlieb, Steen & Hamilton, Washington, D.C., Robert F. Moriarty, Peter D. Clark, Pullman, Comley, Bradley & Reeves, Bridgeport, Conn., Joseph T. Gormley, Jr., Suzanne E. Baldasare, Marsh, Day & Calhoun, Bridgeport, Conn., for defendants

North American Phillips Corp. and N.V. Philips Gloeilampenfabrieken.

Joseph Lieberman, Atty. Gen., Elena Boisvert, Staff Atty., Hartford, Conn., amicus curiae.

Shaun S. Sullivan, Wiggin & Dana, New Haven, Conn., special master.

## RULING ON MOTION FOR SANCTIONS

ZAMPANO, Senior District Judge.

Plaintiff Remington Products, Inc. ("Remington") brought this antitrust action to challenge the acquisition of the "Schick" trademark by a competitor, defendant North American Philips Corporation. Pending is Remington's motion for sanctions pursuant to Fed.R.Civ.P. 37. The motion is based on the failure of defendant N.V. Philips Gloeilampenfabrieken ("N.V. Philips") to provide any discovery from the date that the complaint was filed, January 18, 1982, through December 13, 1984. For the following reasons, the motion for sanctions is granted.

The frustrating course of discovery in this case is accurately set forth in the June 28, 1984 Report and Recommended Ruling of Special Master Shaun Sullivan. That Report is reproduced as an appendix to this ruling, so that details of the discovery difficulties need not be repeated here. Briefly, N.V. Philips, a Netherlands corporation, refused to provide any discovery in this action due to what is commonly termed a "blocking statute." N.V. Philips claimed that it would violate a Dutch criminal law if it participated in Remington's discovery requests. Remington filed a motion to compel, which the Special Master recommended be granted in a report filed on January 7, 1983. On January 24, 1983, the Court adopted the recommended ruling, and ordered that N.V. Philips provide certain discovery "as soon as practicable." Despite that Order, discovery materials were not forthcoming, and Remington filed a motion for sanctions. In a reasoned Report filed on June 28, 1984, the Special Master recommended that a default judgment be entered

against N.V. Philips. He found that N.V. Philips' reliance on the blocking statute "was for the purpose of avoiding discovery rather than complying with Dutch law." Report at 28–29. Further, he concluded that "a finding of bad faith on the part of N.V. Philips is justified on these facts." *Id.* at 29.

N.V. Philips filed an objection to the Special Master's recommendation, and the issues raised were fully briefed and argued before this Court. N.V. Philips' main argument was that raised in its "Motion to Vacate, Without Prejudice, Discovery Order of January 24, 1983," which it filed on September 28, 1984. Specifically, N.V. Philips argued that under a new interpretation of the blocking statute by the Dutch government, "the conditions for application [of the statute] are not fulfilled as long as it is still left to the parties' judgment to decide upon the scope and contents of the information to be submitted consistent with the principles of Dutch law and there is no judicial decision imposing an obligation upon the Dutch citizen." *Id.* at 3. In other words, N.V. Philips contended that it could "voluntarily" comply with discovery requests that it believed would be permitted disclosures under Dutch law, but that if a court ordered discovery, then compliance with the court order would violate Dutch criminal law. The Court was repeatedly assured in N.V. Philips' moving papers and by its counsel at oral argument that it would provide substantial discovery immediately if the Court's discovery order of January 24, 1983 was vacated.

In an attempt to bring this case closer to trial, and without commenting on N.V. Philips' arguments, this Court on December 13, 1984, vacated its earlier discovery order. Further, in a Memorandum on Pending Discovery Requests filed simultaneously, the Court requested that plaintiff's counsel advise it concerning the progress of voluntary discovery. The discovery as to which the Court sought a report included the majority of the information ordered to be produced in the January 24, 1983 order. Also in that memorandum, the Court stated that

plaintiff "may" submit an affidavit as to its attorneys fees and costs "related to proceedings resulting in the Court's orders of January 24, 1983 and December 13, 1984."

On February 19, 1985, Remington reported that it had been provided substantial discovery by N.V. Philips, and that any further difficulties could be resolved without court intervention. In fact, discovery as to N.V. Philips was essentially completed by June 1985. The case will be ready for trial following rulings on recently filed crossmotions for summary judgment.

Also on February 19, 1985, Remington's counsel submitted an affidavit setting forth expenses of $178,162.37 "incurred by Remington in connection with its efforts to obtain discovery from N.V. Philips."

DISCUSSION

*A. Propriety of Sanctions*

■ Under Fed.R.Civ.P. 37(a)(4), Remington is entitled to its reasonable expenses incurred in obtaining the Court's order of January 23, 1983, unless N.V. Philips was "substantially justified" in opposing Remington's motion to compel. *See generally* 4A *Moore's Federal Practice* ¶ 37.02[10.-1], at 37–47. Although an award of costs is designed to reimburse the moving party rather than to punish the opposing party, *id.* ¶ 37.02[10], "the court is free to consider the value such an order may have as a deterrent, both in the case before it and on other litigation." *Industrial Aircraft Lodge 707 v. United Technologies Corp.,* 104 F.R.D. 471, 473 (D.Conn.1985) (citing *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 763–64, 100 S.Ct. 2455, 2462–63, 65 L.Ed.2d 488 (1980); *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1066 (2 Cir. 1979); *J.M. Cleminshaw Co. v. City of Norwich,* 93 F.R.D. 338, 349 (D.Conn. 1981) ).

■ This Court agrees with and adopts the Special Master's finding that N.V. Philips' refusal to provide any discovery was a bad-faith effort to avoid complying with the rules governing discovery proceedings. Accordingly, the Court finds, for the reasons stated in the Special Master's report, that N.V. Philips was not substantially justified in resisting discovery efforts by Remington.[1]

After the January 24, 1984 order was filed and N.V. Philips failed to comply, Remington filed a motion for sanctions. Sanctions for failure to comply with a discovery order are governed by Fed.R.Civ.P. 37(b), which provides that the Court "shall require the party failing to obey the order ... to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." Again, for the reasons stated in the Special Master's report, the Court finds that N.V. Philips' position was not substantially justified. Indeed, the Court agrees with the Special Master that a far more harsh sanction than the award of expenses would have been appropriate in the event discovery was not forthcoming following the December 13, 1984 order.

For the above reasons, the Court finds that N.V. Philips' position regarding discovery disputes in this case was not substantially justified. There are no other circumstances that make an award of expenses unjust. Therefore, Remington is entitled to its reasonable expenses incurred in obtaining the Court's order of January 23, 1983, and in attempting to obtain sanctions for N.V. Philips' failure to comply with that order through December 18, 1984. Fed.R.Civ.P. 37(a)(4); Fed.R.Civ.P. 37(b).

---

1. N.V. Philips argues that it is entitled to an evidentiary hearing on the issue of the justification of its position before expenses are awarded under Rule 37(a)(4). The Court disagrees. N.V. Philips has had a full and fair opportunity to litigate its position. It has filed lengthy and abundant memoranda setting forth its position. Further, the central issue is one of law, namely, the effect of the Dutch blocking statute. Under these circumstances, an evidentiary hearing would be cumulative and unnecessary. *Margoles v. Johns,* 587 F.2d 885, 888–89 (7 Cir.1978); *Persson v. Faestel Investments, Inc.,* 88 F.R.D. 668, 670 (N.D.Ill.1980).

## B. *Amount of Expenses Awarded*

As to the amount of expenses, Remington's counsel submitted a lengthy and detailed affidavit of fees and costs incurred "as a direct and necessary result" of the discovery dispute. The Court has carefully reviewed that affidavit, keeping in mind that expenses unreasonably incurred are not properly awarded under Rule 37. Unquestionably Remington seeks a substantial amount in fees and costs. However, in light of the detailed and lengthy memoranda filed by both sides on the discovery dispute, it appears on the present state of the record that the amount requested is reasonable. The motions required repeated appearances before the Special Master and before this Court. Lengthy memoranda carefully addressing the dispute were submitted by both Remington and N.V. Philips over a period of many months.

N.V. Philips makes several arguments in support of its position that the expenses requested are unreasonable. For example, it questions whether certain costs expended were reasonably related to the Rule 37 motion. The Court will, therefore, provide N.V. Philips with an evidentiary hearing if it wishes to explore this issue further. The scope of that hearing would be limited to the question of whether expenses incurred by Remington were reasonably related to the litigation of the instant motion. However, N.V. Philips has not asked for such a hearing.[2] Accordingly, a hearing will not be scheduled at this time.

## ORDER

For the foregoing reasons, the Court grants Remington's motion for sanctions, Fed.R.Civ.P. 37, in the amount of $178,-162.37, effective September 16, 1985. If N.V. Philips files a motion for an evidentiary hearing on or before September 16, 1985, then the amount of expenses awarded will be determined at the conclusion of the evidentiary hearing.

SO ORDERED.

---

**2.** N.V. Philips has asked that the Court order discovery related to the amount of expenses sought. Although the Court will not do so at

## APPENDIX

RECOMMENDED RULING AND REPORT OF THE SPECIAL MASTER WITH RESPECT TO REMINGTON PRODUCTS, INC.'S MOTION FOR DEFAULT AND SANCTIONS AGAINST N.V. PHILIPS' GLOEILAMPENFABRIEKEN, DATED SEPTEMBER 9, 1983

In this antitrust action, plaintiff Remington Products, Inc. ("Remington") challenges the acquisition of the electric shaver assets of defendant Schick Incorporated ("Schick") by defendant North American Philips Corporation ("NAPC") and NAPC's parent, defendant N.V. Philips' Gloeilampenfabrieken ("N.V. Philips"). The District Court referred the case to the undersigned Special Master for a recommended ruling and report with respect to certain discovery disputes which have arisen between the parties.

The present discovery dispute results from the failure of N.V. Philips, a Dutch corporation and a defendant in this case, to provide any discovery in this action. On October 25, 1982, Remington filed a Motion to Compel Discovery against N.V. Philips. N.V. Philips in its Memorandum in Opposition argued that (1) certain portions of the requested discovery were irrelevant, (2) the discovery requested which might be relevant was duplicative of material provided by or available from NAPC, and (3) N.V. Philips was prevented by Article 39 of the Dutch Competition Code from complying with the discovery requests.

After oral argument on Remington's Motion to Compel, the Special Master recommended that (1) N.V. Philips' relevancy objection be sustained only as to those documents which reflect transactions or events not affecting the U.S. market, and otherwise be overruled, (2) N.V. Philips be required to list relevant documents identical to those provided by NAPC, and otherwise recommended that the objection based

---

this time, the parties are encouraged to resolve the issue without further expenses to their clients.

on duplication of material in the possession of NAPC be overruled, and (3) N.V. Philips be ordered to comply with certain discovery requests, and be ordered to seek a waiver under Article 39 from the Dutch authorities. Recommended Ruling, dated January 7, 1983, at 2–9. The Court adopted the Recommended Ruling on January 24, 1983, and ordered N.V. Philips to comply with discovery in accordance with that ruling.

On February 1, 1983, N.V. Philips filed an application by letter with the Dutch Ministry of Economic Affairs (the "Ministry") requesting a waiver of the restrictions of Article 39, attaching to the application the pleadings in this case relating to discovery from N.V. Philips. The application stated:

> In accordance with American rules of practice, "discovery proceedings" have been initiated by Remington against both NAPC and our company in which Remington did not confine itself to the information already provided and offered by NAPC but insisted that also our company furnish information, documents, and "depositions." We have opposed these demands. See in this connection attachment A: 2a–2w.
>
> Nevertheless, on 24th January 1983 Judge Robert C. Zampano made the attached order (attachment A: 3).
>
> In compliance with Article 39 of the Dutch Economic Competition Act we hereby request you to grant us an exemption from the prohibition to comply with the Judge's order.

On March 9, 1983, Remington submitted a memorandum to the Ministry setting forth reasons why the waiver should be granted. The Ministry reached a "decision in principle" not to grant the waiver in May, 1983, and officially denied the request for a waiver by letter dated August 2, 1983. N.V.

Philips subsequently informed the Court on August 19, 1983, of the Ministry's decision and stated that compliance with the Court's discovery order was "not possible".

On September 9, 1983, Remington filed a Motion for Default and Sanctions against N.V. Philips for N.V. Philips' failure to comply with the discovery order of the Court dated January 24, 1983. N.V. Philips filed a Memorandum in Opposition, dated November 18, 1983, to which Remington has responded with a Reply Memorandum, dated December 2, 1983. Oral argument on the motion was held before the Special Master on December 19, 1983.

I.

A. *N.V. Philips*

N.V. Philips is the largest company in The Netherlands, with over $16 billion in annual worldwide gross revenues. N.V. Philips manufactures and sells a myriad of products, many of which are exported to and sold in the United States.[1] Electric shavers manufactured by N.V. Philips have been sold in the United States since 1948 under the NORELCO brand name, with over 3 million such shavers presently being sold in the United States each year.

In the course of its business operations N.V. Philips has frequently sought the protection of American laws. For example, N.V. Philips has sought and received U.S. trademark registrations and patent registrations for many of its products, including electric shavers. N.V. Philips has also resorted to American courts and agencies with respect to disputes regarding its business interests.[2]

The amended complaint in this action names N.V. Philips as a defendant in all four counts, which counts allege violations of Sections 1 and 2 of the Sherman Act, Section 7 of the Clayton Act, and §§ 35–26 and 35–27 of the Connecticut General Stat-

---

**1.** *E.g.*, televisions, radios, video cassette recorders, coffeemakers, hair dryers, home video games, cameras, home and office lighting equipment, and medical equipment.

**2.** *See, e.g., N.V. Philips v. United States,* [1 Cl.Ct. 783] No. 149–83C, United States Claims Court, slip op., March 21, 1983; *N.V. Philips v. Atomic Energy Commission,* 316 F.2d 401 (D.C.Cir. 1963); *In re N.V. Philips' Gloeilampenfabrieken,* Decision of the Comptroller General, No. B–207485.3 (May 3, 1983).

utes. N.V. Philips has not contested the Court's jurisdiction over it as a party in this case.

## B. *Article 39*

Article 39 of the Dutch Competition Code states, in relevant part:

1. Save in so far as Our Ministers have prescribed an exception or, on request, have granted exemption, it shall be forbidden to comply deliberately with any measures or decisions taken by any other State, which relate to any regulations of competition, dominant positions or conduct restricting competition.

2. Exceptions and exemptions may have restrictions attached to them. They may be subject to conditions.

Article 39 is similar to nondisclosure statutes of several other nations, which are commonly termed "blocking statutes". Article 39 was enacted in response to an investigation and prosecution in the 1950's by the U.S. Department of Justice of an international petroleum cartel. The Dutch government prohibited disclosure of documents in that proceeding, and subsequently codified its position in Article 39.

There is no doubt, therefore, that the purpose of Article 39 is to frustrate the enforcement of U.S. antitrust law with respect to Dutch companies.[3] There has never been a reported prosecution of a Dutch company for failure to abide by Article 39.

## II.

A party failing to comply with a discovery order of the Court is normally subject to sanctions pursuant to Rule 37(b) of the Federal Rules of Civil Procedure. Rule 37(b)(2) states the general rule that if "a party or an officer, director, or managing agent of a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just". Where, however, a foreign party's failure to comply is based on a statute of its own country which prohibits compliance, the court must balance several factors in determining whether sanctions are appropriate. *See* Restatement (Second) of the Foreign Relations Law of the United States, § 40 (1965).

The seminal case regarding noncompliance with discovery orders based on foreign blocking statutes is *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197 [78 S.Ct. 1087, 2 L.Ed.2d 1255] (1958), in which a Swiss company suing to recover assets seized under the Trading with the Enemy Act failed to comply with a court order requiring disclosure of documents. The company claimed that disclosure would violate Swiss penal and banking secrecy laws. The district court dismissed the company's complaint as a sanction for noncompliance, but the Supreme Court reversed.

The Supreme Court held in *Societe* "that Rule 37 should not be construed to authorize dismissal of this complaint because of petitioner's noncompliance with a pretrial production order when it has been established that failure to comply has been due to inability, and not to wilfullness, bad faith, or any fault of petitioner." 357 U.S. at 212 [78 S.Ct. at 1095]. The Court did not hold that no sanctions were appropriate where good faith inability to comply is shown; in fact, the Court suggested that the district court would be justified in drawing adverse inferences at trial from the noncompliance. 357 U.S. at 213. [78 S.Ct. at 1096]. The Court held only that dismissal was not authorized by Rule 37 where good faith had been demonstrated. *Id.*

The Court's holding in *Societe Internationale* was predicated on the fact that the Swiss company was seeking return of company assets which had been summarily seized by the government "without the opportunity for protest by any party claiming

---

*See* Tentative Draft No. 3, Restatement (Revised) of Foreign Relations Law in the United States, § 420 at 22.

that seizure was unjustified under the Trading with the Enemy Act." *See* 357 U.S. at 210–11 [78 S.Ct. at 1094–95]. The district court's dismissal of the action thus raised Fifth Amendment due process concerns since "this summary power to seize property which is believed to be enemy-owned is rescued from constitutional invalidity under the Due Process and Just Compensation Clauses of the Fifth Amendment only by those provisions of the Act which afford a nonenemy claimant a later judicial hearing as to the propriety of the seizure." 357 U.S. at 210–11. [78 S.Ct. at 1094–95]

A review of the case law involving blocking statutes decided subsequent to *Societe* will be helpful in evaluating N.V. Phillips' actions in the present case. The lower courts have relied heavily on Section 40 of the Restatement (Second) of Foreign Relations Law of the United States (1965) for guidance. Section 40 provides:

Where two states have jurisdiction to prescribe and enforce rules of law and the rules they may prescribe require inconsistent conduct upon the part of a person, each state is required by international law to consider, in good faith, moderating the exercise of its enforcement jurisdiction, in the light of such factors as

(a) vital national interests of each of the states,

(b) the extent and the nature of the hardship that inconsistent enforcement actions would impose upon the person,

(c) the extent to which the required conduct is to take place in the territory of the other state,

(d) the nationality of the person, and

(e) the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state.

In *United States v. First National City Bank*, 396 F.2d 897 (2d Cir.1968), the court relied on § 40 in affirming a civil contempt judgment against a bank for failure to comply with a grand jury subpoena requiring the bank to produce documents located in the bank's branch in Germany. After balancing the factors enumerated in § 40, the court concluded that German law requiring bank secrecy did not excuse the bank's noncompliance. 396 F.2d at 905. In reaching this decision, the court noted that violation of the German law would not subject the bank to criminal charges and that the bank was an American corporation rather than a German corporation. *Id.* at 903, 905.

A district court's decision not to order a bank to seek waivers from its customers to avoid Swiss bank secrecy law was affirmed in *Trade Development Bank v. Continental Ins. Co.*, 469 F.2d 35 (2d Cir.1972). The Second Circuit observed that, while the district court unquestionably had the power to order the requests for waivers, and that the "power might appropriately have been exercised in a case such as this", the district court had not abused its discretion in reaching its decision. 469 F.2d at 40–41.[4]

The imposition of sanctions in the form of a civil contempt for failure to comply with a discovery order was reversed in *In re Westinghouse Elec. Corp. Uranium Contracts Litigation*, 563 F.2d 992 (10th Cir.1977). In that case, Westinghouse sought discovery by subpoena of documents located in the Canadian offices of a Delaware corporation, which was not a party in the case. The Delaware corporation resisted the subpoena on grounds that a Canadian statute prohibited compliance. Although the Delaware corporation had sought a waiver from the Canadian authorities, which was denied, the district court

---

**4.** The approach of the Court in *Trade Development* has been frequently criticized on the grounds that the balancing of interests performed by the district court is appropriate only at the sanctions stage of the proceedings, and is not germane to the issue of whether an order compelling discovery should be entered. *See, e.g., Ohio v. Arthur Andersen & Co.*, 570 F.2d

1370, 1372 (10th Cir.), *cert. denied* 439 U.S. 833 [99 S.Ct. 114, 58 L.Ed.2d 129] (1978); Note, *Discovery of Documents Located Abroad in U.S. Antitrust Litigation*, 14 Va.J.Int.L. 747, 753 (1974). Since discovery has already been ordered in this case, and a motion for sanctions has been filed, this distinction need not be addressed here.

held the corporation in contempt, finding that a good faith showing of inability to comply had not been made.

After review of *Societe* and § 40, the Tenth Circuit in *Westinghouse* held the finding of lack of good faith to be clearly erroneous, and reversed the contempt judgment. 563 F.2d at 998–99. In balancing the interests, the court noted Canada's national interest in controlling and supervising atomic energy, and observed that Westinghouse's defense did not "stand or fall on the present discovery order", since "the present discovery, though admittedly of potential significance, is still in a sense cumulative." *Id.*

The Ninth Circuit considered the blocking statute issue in *United States v. Vetco Inc.*, 691 F.2d 1281 (9th Cir.), *cert. denied*, 454 U.S. 1098 [102 S.Ct. 671, 70 L.Ed.2d 639] (1981). The IRS had issued summonses to Vetco, an American corporation, requesting documents from Vetco and its overseas subsidiaries. Vetco sought to avoid compliance with respect to its Swiss subsidiary on the grounds, *inter alia,* that compliance would violate a Swiss criminal statute. The district court ordered Vetco to produce the documents, and issued a civil contempt citation when Vetco failed to comply. The Ninth Circuit affirmed. 691 F.2d at 1287–91. The court specifically noted that the case was not controlled by *Societe,* since there were no findings of good faith efforts by Vetco or that production would violate Swiss law. *Id.* at 1287. The court also distinguished *Societe* in that IRS summonses "serve a more pressing national function than civil discovery." *Id.* at 1288.

Both parties to this motion cite in their briefs *In re Uranium Antitrust Litigation,* 480 F.Supp. 1138 (N.D.Ill.1979). The issue decided in that case was whether discovery should be ordered in the face of blocking statutes rather than what sanctions should be imposed for noncompliance, so to that extent the case is inapposite.

However, the court analyzed three factors in making its determination,[5] which are of assistance in considering the present controversy: (1) the strength of the Congressional policies underlying the statute which forms the basis for the moving party's action; (2) whether the requested documents are crucial to the determination of a key issue in the litigation; and (3) an appraisal of the chances for flexibility in a country's application of its nondisclosure laws. 480 F.Supp. at 1154–55. The court, in ordering the requested discovery, determined that: (1) the antitrust laws sued on by the plaintiff "are as important to the preservation of economic freedom and our free-enterprise system as the Bill of Rights is to the protection of our fundamental personal freedoms", quoting *United States v. Topco Associates, Inc.,* 405 U.S. 596, 610 [92 S.Ct. 1126, 1134, 31 L.Ed.2d 515] (1972), (2) the "inevitable inference is that the withheld information is likely to be the heart and soul of plaintiffs' case", and (3) the degree of leniency in the application of the nondisclosure laws of the several affected countries varied from country to country. *Id.*

Sanctions for failure to comply with a court order requiring production of documents were considered in another uranium antitrust case. In *General Atomic Co. v. Exxon Nuclear Co.,* 90 F.R.D. 290 (S.D.Cal.1981), the plaintiff relied on the Canadian uranium nondisclosure statute as its defense to defendant's motion for dismissal of the complaint and default on the counterclaim for noncompliance. The court set out as the test for the motion:

... Exxon must establish by a preponderance of the evidence that: (1) the failure to fully comply with the production orders was caused by "wilfullness, bad faith, or any fault" of [plaintiff]; (2) the withheld documents may be crucial to the outcome of this litigation; (3) Exxon is prejudiced by the failure of discovery in the presentation of its case; and (4) the

---

**5.** The court in *Uranium Antitrust* specifically declined to utilize § 40 of the Restatement in its analysis, arguing that it is "simply impossible" to judicially balance the competing national interests of the United States with foreign countries.

sanctions sought are commensurate with the prejudice to Exxon and the degree of fault attributable to [plaintiff]. 90 F.R.D. at 296.

The court found bad faith amounting to "courting legal impediments" in plaintiff's deliberate storage of documents in Canada with the expectation that they would be unavailable for discovery and in the "destruction or disappearance" of certain documents in the United States. *Id.* at 299, 304. The court further determined that the requested documents were crucial to a fair trial, and that Exxon would be prejudiced by their nondisclosure. *Id.* at 306.

The *General Atomic* court then addressed the question of the sanction to be applied. Although the sanctions sought by Exxon were not precluded under *Societe*, "in view of the court's findings", the court determined that "their imposition should be reserved for extreme situations where lesser sanctions would be ineffective to cure the consequences of the discovery failure." 90 F.R.D. at 307. In lieu of the more drastic remedy of a dismissal of the complaint and default on the counterclaim, the court chose to "deem designated facts presumed established subject to rebuttal by [plaintiff]", precluded plaintiff from asserting certain affirmative defenses, and waived the authenticity and other foundational requirements for Exxon as to certain documents. *Id.* at 308. The court expressly mentioned that "[a]n important factor in declining to impose harsher sanctions is the consideration that Exxon has some evidence [produced by plaintiff] available to utilize in the presentation of its claims." *Id.*

As in *Uranium Antitrust Litigation, supra*, *SEC v. Banca Della Svizzera Italiana*, 92 F.R.D. 111 (S.D.N.Y.1981) concerned the propriety of a discovery order in the face of a Swiss nondisclosure statute rather than the question of sanctions for noncompliance. Nevertheless, Remington relies heavily on the analysis of Judge Pollock in *Banca*. The court in *Banca* utilized the § 40 factors in its determination that discovery should be ordered, noting the importance of U.S. securities laws, the apparent lack of interest of the U.S. and Swiss governments in the case, the flexibility of the Swiss statute given the "necessity" defense available under it, and the defendant's lack of good faith in undertaking its securities transactions "fully expecting to use foreign law to shield it from the reach of our laws". 92 F.R.D. at 117–19.

The most recent reported case considering sanctions for noncompliance with a discovery order, based on a blocking statute, is *In re Oil Spill by the Amoco Cadiz*, 93 F.R.D. 840 (N.D.Ill.1982). That case involved attempted discovery by the owners of a grounded oil tanker from the Republic of France, a party to the proceeding. The requested documents had been compiled by French government inquiry commissions. France refused to comply with the order compelling discovery, on the ground that disclosure would violate a French criminal nondisclosure statute. The owners sought a default judgment against France and dismissal of France's counterclaims. The court determined that France's refusal to comply was in good faith, and therefore refused the owners' request for default and dismissal. 93 F.R.D. at 843. Instead, the court allowed the owners the admission into evidence of certain arguably objectionable documents, and stated that it would issue other appropriate rulings at trial to try to minimize the prejudice to the owners. *Id.* at 844.

Analysis of the foregoing cases leads to the following conclusions: (1) the mere existence of the prohibition against disclosure in Article 39 does not preclude the imposition of sanctions against N.V. Philips for its noncompliance with the Court's discovery order; (2) whether sanctions should be imposed depends on a balancing of interests under *Societe* and § 40 of the Restatement; (3) if sanctions are imposed, the appropriate sanction is determined by evaluating the prejudice to Remington of N.V. Philips' noncompliance with the discovery order and the degree of culpability which can be attributed to N.V. Philips; (4) the sanction to be imposed must be designed as

a just remedy, the purpose of which is to negate the impact of N.V. Philips' refusal to comply with the discovery order; and (5) the sanction of default is not permissible upon a finding of good faith by N.V. Philips.

### III.

A review of the factors enumerated in § 40 of the Restatement leads to the conclusion that the imposition of sanctions against N.V. Philips is warranted in the circumstances of this case.

The first factor—the competing interests of the two countries—militates in favor of an order designed to enforce this Court's prior discovery order. The vital national interest of the United States in the enforcement of its antitrust laws is unquestionable. As the court observed in *Uranium Antitrust Litigation:*

> Plaintiffs' complaint challenges activities by the defendants which, if true, would constitute massive violations of this nation's antitrust laws. "These laws have long been considered cornerstones of this nation's economic policies, have been vigorously enforced and the subject of. frequent interpretation by our Supreme Court." *United States v. First National City Bank,* 396 F.2d 897, 903 (2d Cir.1968). "They are as important to the preservation of economic freedom and our free-enterprise system as the Bill of Rights is to the protection of our fundamental personal freedoms." *Unit-*

*ed States v. Topco Associates, Inc.,* 405 U.S. 596, 610, 92 S.Ct. 1126, 1135, 31 L.Ed.2d 515 (1972). 480 F.Supp. at 1154.

The fact that this is a private civil action rather than a public enforcement action does not in any manner diminish the importance of the national interest involved; indeed, Congress intended that the antitrust laws would be enforced through civil actions by non-governmental parties. *Id.*

The Dutch national interest, on the other hand, is much less compelling. The Ministry's letter denying N.V. Philips' exemption request hints that the Dutch concern is with confidentiality.[6] Article 39 is significantly different from the Swiss bank secrecy law or the Canadian uranium law, which were involved in *Banca* and *General Atomic, supra.* Those nondisclosure laws seek to prevent disclosure of a certain *type* of information in *any* case. Article 39, however, seeks to prevent the disclosure of *all* information in only a single type of case, *i.e.* an antitrust case. It is therefore clear that the Dutch interest involved is not the confidentiality of business documents, but is rather the frustration of the antitrust laws of the United States. Frustration of the law enforcement efforts of another country is not a legitimate national interest which can justify the failure to enforce a valid Court order. *See* Tentative Draft No. 3, Restatement (Revised) of Foreign Relations Law of the United States, § 420, Comment (b). Furthermore, to the

---

**6.** The Ministry's letter states, in relevant part:

With respect to the first two parts of the decision of the District Court I inform you, also on behalf of the Minister of Foreign Affairs, that I refuse exemption in as far as it concerns information in documents—which also includes written answers to "interrogatories"—of N.V. Philips' Gloeilampenfabrieken which are in the Netherlands since it has not been determined that by complying with the request no conflict can occur with public international law or with the material or formal principles of the Dutch Competition Law. With respect to the last part of the decision of the District Court it is considered that it concerns behaviour, facts and circumstances in and outside the United States .of America of N.V. Philips' Gloeilampenfabrieken, a company operating in the Netherlands.

With respect to the behaviour mentioned in the preceding paragraph it is also considered that the "Notices of Deposition" by which the employees concerned of N.V. Philips' Gloeilampenfabrieken are summoned to make depositions are not subject to any limitation which would mean that information based on documents which are in the Netherlands, belonging to N.V. Philips' Gloeilampenfabrieken would not be excluded in the making of these depositions.

I inform you, also on behalf of my abovementioned colleague, that I also refuse exemption with respect to this part of the decision of the American Judge involved viz, the appearance in person in order to answer questions and to give depositions, on the same grounds as put forward with respect to the order to produce documents and to answer "interrogatories".

extent that the Dutch government has any legitimate interest in preserving the confidentiality of the documents in question, that interest can be adequately protected through the Protective Order previously entered in this action on May 27, 1982.[7] Therefore, the first factor of § 40 strongly favors granting the present motion.

The second factor is the extent and nature of the hardship that inconsistent enforcement actions would impose upon the party subject to both jurisdictions. Article 39 is a criminal statute, a fact found significant by the Supreme Court in *Societe* with respect to the Swiss law involved there. *See* 357 U.S. at 211. [78 S.Ct. at 1095]. As previously noted, however, no prosecution has ever been pursued under Article 39. As in *Banca*, the availability to N.V. Philips of a "necessity" defense to any prosecution under Article 39 diminishes the hardship imposed on N.V. Philips. *See* Fokkema, Chorus, Hodis and Lissar, *Introduction to Dutch Law for Foreign Lawyers*, at 339. Furthermore, just as the Supreme Court observed in *Societe* that inability to comply is distinguishable from refusal to comply, so might a Dutch court determine that disclosure by N.V. Philips pursuant to a court order is not a "deliberate" disclosure within the meaning of Article 39.[8] Although the foregoing considerations may not completely remove all concern that N.V. Philips could face criminal penalties if it complies with this Court's order, they do greatly reduce that risk. *See, e.g., SEC v. Banca Della Svizzera Italiana*, 92 F.R.D. at 118–19. Indeed, even if these considerations do not afford N.V. Philips a defense, the Dutch authorities must also consider moderating the enforcement of Article 39, in light of the factors outlined in § 40 of the Restatement.

The three remaining factors of § 40 of the Restatement—the country where compliance will take place, nationality of the person against whom the order is directed and the prospects for compliance with this Court's order if sanctions are imposed— "appear to be less important in [the Second] Circuit." *SEC v. Banca Della Svizzera Italiana*, 92 F.R.D. at 119. The court in *Banca* resolved the three factors in favor of the moving party with respect to discovery sought from a Swiss corporation. The *Banca* court's analysis of these factors can be applied with equal force to the instant case:

> It is significant nevertheless that [the three factors also] tip in favor of the SEC. Performance may be said to occur here as well as in Switzerland since the actual answering of the interrogatories will presumably take place in the United States, where BSI's lawyers are. As for citizenship, it is true that BSI is a Swiss corporation. However, its transnational character, as evidenced by its large number of foreign affiliates, ... render this Court less reluctant to order BSI to conform to our laws even where such an order may cause conflict with Swiss law. Last, with respect to enforcement, this Court believes that an appropriate formal order directing the demanded disclosure, to the extent that compliance has been incomplete, will serve as the requisite foundation for any further actions that may be needed in the form of sanctions and should serve to bring home the obligations a foreign entity undertakes when it conducts business on the American securities exchanges. 92 F.R.D. at 119.

The final factor to be considered, as mandated by *Societe* and subsequent cases, is the good faith of N.V. Philips. That issue is, not unexpectedly, the subject of considerable disagreement between the parties.

---

7. Indeed, if N.V. Philips believes the outstanding protective order to be inadequate, the Special Master would be willing to consider recommending that the Court require any additional reasonable safeguards suggested by N.V. Philips.

8. By its express terms, Article 39 prohibits only "deliberate" disclosures. The record of the instant case, in which N.V. Philips has filed several briefs and motions in an effort to avoid disclosing the requested information, would appear to strongly refute any suggestion that N.V. Philips' disclosure—if such disclosure is hereafter made—was deliberate.

Under *Societe,* parties resisting discovery under a blocking statute show good faith when they "make all ... efforts to the maximum of their ability" to comply. 357 U.S. at 205. [78 S.Ct. at 1092] Remington argues that the bad faith of N.V. Philips is demonstrated by the tenor of its exemption application to the Ministry, and by the fact that N.V. Philips provided discovery in another antitrust case in which it was a party, when it apparently was in the interest of N.V. Philips to comply with the requested discovery. *See General Business Systems v. North American Philips Corp.,* 699 F.2d 965 (9th Cir.1983).[9] N.V. Philips contends that the situation in *General Business Systems* is distinguishable from this case, and that its conduct in this case reflects its good faith.

By applying for an exemption from Article 39 from the Dutch Ministry, N.V. Philips certainly complied with the letter of the Court's order of January 24, 1983. However, the tenor of this application falls far short of the spirit of that order.[10] The application states that Remington "did not confine itself" to the discovery provided by NAPC, but "insisted" that N.V. Philips provide discovery. N.V. Philips then informs the Ministry that "[w]e have opposed these demands", and provides the Ministry with copies of its briefs opposing the requested discovery. The application strongly suggests that N.V. Philips remained opposed to the requested discovery and did not support the exemption application. As such, it is evidence which would support a finding of bad faith.

Remington also points out that N.V. Philips' application is deficient in that it does not mention important facts such as that the discovery order was limited to matters affecting the United States electric shaver market and that any confidential information would be protected by the Court's protective order in this case, dated May 27, 1982. N.V. Philips argues that it asked the Dutch authorities to consider information that Remington might submit, and that Remington in fact made such submissions. However, the question here is the good faith of N.V. Philips, and submissions by Remington are no substitute for a good faith application by N.V. Philips.[11]

**9.** Remington also argues that N.V. Philips has the burden of showing its good faith. Since N.V. Philips is clearly able to comply with the Court's discovery order and has consciously decided not to do so, it is proper to place on it the burden of demonstrating good faith with respect to its reliance on Article 39. *See Societe Internationale v. Rogers,* 357 U.S. at 212; [78 S.Ct. at 1095] *United States v. Vetco, Inc.,* 691 F.2d at 1287. *Contra, General Atomic Co. v. Exxon Nuclear Co.,* 90 F.R.D. 290, 296 (S.D.Cal. 1981).

**10.** N.V. Philips contends that the tenor of the application is similar to that of an exemption request found to be in good faith in *In re Westinghouse, supra,* 563 F.2d at 999–1000. The request in *Westinghouse* stated, in part:

Rio Algom Corporation, as a result, finds itself in a dilemma. It has no desire to offend the court in Utah, but if it complies with the court order in respect to any documents which are subject to the Uranium Information Security Regulations, then it would be in breach, and would cause individuals in Canada to be in breach of the Regulations. This dilemma could be resolved if the Honourable Minister of Energy, Mines and Resources were to consent to the release of the subject documents and to the disclosure of the contents of those documents.

Rio Algom Corporation, therefore, respectfully requests the consent of the Honourable Minister of Energy, Mines and Resources to the release of all documents located in Canada which would respond to the subpoenas and to the disclosure or communication of the contents thereof by Mr. George R. Albino or any other officer, director or employee of Rio Algom Corporation.

A comparison of the two requests for exemption belies N.V. Philips' contention that its request is the equivalent of that approved in *Westinghouse.*

**11.** The fact that N.V. Philips asked the Dutch authorities to consider Remington's submissions may be some indicium of its good faith. However, given the following footnote from page 9 of the Recommended Ruling dated January 7, 1983, as ordered by the Court on January 24, 1983, failure of N.V. Philips to cooperate with Remington would have been clear bad faith:

N.V. Philips indicated at oral argument that if discovery were ordered it would seek an exemption from Section 39 from the Dutch authorities, and agreed to allow Remington to provide "some input" in the application for an exemption from the Dutch statute. Since the good faith of N.V. Philips will be an important factor in any decision regarding sanc-

Whether N.V. Philips' apparent lack of good faith in the exemption application would of itself compel a finding of bad faith, other conduct of N.V. Philips, both in the present action and in the *General Business Systems* litigation, supports a finding of bad faith with respect to N.V. Philips' reliance on Article 39. *See General Atomic Co. v. Exxon Nuclear Co., supra*, 90 F.R.D. at 295 ("While Gulf's efforts to overcome the Security Regulations constitute a *prima facie* showing of good faith to comply with the production orders, Gulf's conduct prior to the passage of the Security Regulations must also be evaluated to determine the appropriateness of sanctions.")

In its original objections to the discovery sought by Remington, N.V. Philips not only asserted Article 39, but also objected on grounds of relevancy and duplicative discovery to all of Remington's discovery demands. Although certain of Remington's discovery requests sought information not affecting the United States market, and accordingly N.V. Philips' relevancy objections were sustained as to these requests, the vast majority of Remington's requests to which N.V. Philips objected as to relevancy were clearly relevant. Similarly, N.V. Philips' objection that all discovery sought by Remington was duplicative because Remington had already obtained discovery of NAPC, a different party, was unsupportable.

The Recommended Ruling dated January 7, 1983, as ordered by the Court on January 24, 1983, expressed "no opinion at [that] time ... on the good faith of N.V. Philips to [that] point." The indiscriminate nature of the relevancy and duplicative discovery objections to all discovery sought by Remington suggests that N.V. Philips' reliance on Article 39 was simply another basis for N.V. Philips to utilize to avoid providing any discovery to Remington, and was tantamount to "courting legal impediments" which the Supreme Court in *Societe* recognized as constituting bad faith. 357 U.S. at 209. [78 S.Ct. at 1094] This inference is confirmed by N.V. Philips' actions in *General Business Systems v. North American Philips Corp.*

*General Business Systems* was an antitrust suit brought against N.V. Philips and two of its American subsidiaries, NAPC and Philips Business Systems, Inc. GBS, a Philips' distributor for Northern California prior to its termination by Philips Business Systems in 1978, alleged violations of sections 1 and 2 of the Sherman Act and section 3 of the Clayton Act with respect to defendants' small computer magnetic ledger cards. The discovery proceedings in that case suggest that N.V. Philips has not sought the protection of Article 39 where compliance with a discovery order was in its interest.

There is no question that N.V. Philips provided a great deal of discovery in *General Business Systems*, including answers to interrogatories, production of documents and depositions of employees. Remington argues that N.V. Philips' actions in *General Business Systems* demonstrate that N.V. Philips ignores Article 39 when it is convenient to do so and is using Article 39 in this case "solely as a device to avoid its lawful discovery obligations." N.V. Philips contends that *General Business Systems* is distinguished by the fact that the products at issue there were manufactured in Germany, not The Netherlands, and the documents produced and interrogatory answers given contained information derived from Germany or elsewhere outside The Netherlands. N.V. Philips further states that its decision to provide discovery in *General Business Systems* was based on its conclusion that Article 39 did not prohibit compliance, and that it would be irrational to accept Remington's arguments because of N.V. Philips' decision to comply with discovery where Article 39 was not clearly triggered.

*In camera* review of the discovery available to the Special Master which was provided by N.V. Philips in *General Business Systems* reveals that N.V. Philips' charac-

tions, it is in its interest to consult with Remington on the application....

terization of the discovery it provided in that case is not accurate. It is clear that answers to interrogatories and documents produced by N.V. Philips contained information that could only have been derived from The Netherlands. *See* Remington Exhibits 33, 35–37. Thus, N.V. Philips was willing to construe Article 39 narrowly as not applying in order to make disclosure in the *General Business Systems* litigation. Although this is commendable in attempting to obey the conflicting requirements of two sovereigns, it demonstrates that N.V. Philips' reliance on Article 39 here, when its application is equally tenuous, was for the purpose of avoiding discovery rather than complying with the Dutch law.

The combination of the exemption application, the initial response to Remington's discovery requests and the disclosure made in *General Business Systems* compels the conclusion that N.V. Philips has not sustained its burden of showing good faith. Moreover, even if Remington had the burden of showing bad faith by N.V. Philips, a finding of bad faith on the part of N.V. Philips is justified on these facts. When this finding is viewed in conjunction with a balancing of § 40 factors, which strongly favor Remington, it is clear that sanctions against N.V. Philips are appropriate. *See, e.g., General Atomic Co. v. Exxon Nuclear Co., supra,* 90 F.R.D. at 306–07.

### IV.

Having determined that sanctions are appropriate in this case, the next issue to be addressed is the form the sanctions should take. The principal goal in fashioning a sanction in this context is to encourage N.V. Philips to comply with the order issued by this Court. Consequently, the sanction should be sufficient to negate any benefit N.V. Philips might otherwise obtain in refusing to comply, and it must negate any prejudice that Remington would suffer from a failure of compliance. Secondly, the sanction should be designed, insofar as possible, so that it will not adversely affect any party to the action, other than N.V. Philips. Finally, the sanction chosen should be the one which does the least amount of damage to N.V. Philips, while accomplishing the first two stated goals. A corollary to this last principle is that the drastic remedy of default should be utilized only where there is no other alternative that will satisfy the first two goals.

Clearly, the importance of the requested discovery and the resultant prejudice to Remington of N.V. Philips' failure to provide that discovery is extreme. "[T]he heart of any American antitrust case is the discovery of business documents. Without them, there is virtually no case." *In re Uranium Antitrust Litigation,* 480 F.Supp. at 1155, *quoting* Note, *Discovery of Documents Located Abroad in U.S. Antitrust Litigation,* 14 Va.J.Int'l.L. 747 (1974). Remington claims that N.V. Philips has violated the antitrust laws by conspiring with NAPC and Schick. N.V. Philips' failure to provide any discovery not only virtually insulates it from liability for conspiracy, but also greatly prejudices Remington's entire conspiracy case. "The inevitable inference is that the withheld information is likely to be the heart and soul of plaintiffs' case." *In re Uranium Antitrust Litigation,* 480 F.Supp. at 1155. The discovery sought of N.V. Philips by Remington is, accordingly, crucial to its case.

Concomitant with the prejudice to Remington is the unfair advantage accruing to N.V. Philips as the result of its failure to provide any discovery. Given N.V. Philips' failure to demonstrate its good faith, it is clear that an appropriate sanction should attempt to prevent N.V. Philips' from profiting by its refusal to provide discovery.[12]

In addition to the rights and interests of Remington and N.V. Philips, the appropriate sanction must take into account the interests of NAPC and Schick. Both of these defendants have provided discovery to Remington. Accordingly, any sanction

---

**12.** The discovery immunity claimed by N.V. Philips could very well lead to *de facto* antitrust immunity.

against N.V. Philips must be crafted as nearly as possible to avoid affecting NAPC and Schick.[13]

In determining the appropriate sanction, the case law requires that the least onerous sanction be imposed that is consistent with the factors and interests discussed *supra* at 28–29. *See Wilson v. Volkswagen of America, Inc.,* 561 F.2d 494, 504 (4th Cir. 1977), *cert. denied,* 434 U.S. 1020 [98 S.Ct. 744, 54 L.Ed.2d 768] (1978); *Diaz v. Southern Drilling Corp.,* 427 F.2d 1118, 1127 (5th Cir.), *cert. denied,* 400 U.S. 878 [91 S.Ct. 118, 27 L.Ed.2d 115] (1970). A harsh sanction is not appropriate if a lesser sanction is sufficient to do justice under the circumstances. *See Webber v. Eye Corp.,* 721 F.2d 1067, 1069 (7th Cir.1983); Note, *Standards for Imposition of Discovery Sanctions,* 27 Me.L.Rev. 247, 266 (1975).

Rule 37(b) provides a wide range of sanctions for failure to comply with a discovery order. In addition to the general authority of the court to "make such orders in regard to the failure as are just", Rule 37(b) specifically provides for the following sanctions: (1) the award of reasonable expenses, including attorney's fees, incurred as a result of the failure to provide discovery; (2) an order designating facts to be taken as established for the purposes of the action; (3) an order precluding the disobedient party from supporting or opposing designated issues; (4) an order striking out pleadings or parts thereof, or staying proceedings until compliance with the discovery order is achieved; (5) an order of contempt; and (6) an order rendering judgment by default or dismissal. Each of the foregoing sanctions will be analyzed in turn for its fitness with respect to the criteria set forth above.

The award of reasonable expenses, including attorney's fees, is the mildest of the Rule 37(b) sanctions. Such an award is clearly appropriate here. *See Ohio v. Arthur Andersen & Co.,* 570 F.2d 1370, 1374–75 (10th Cir.), *cert. denied,* 439 U.S. 833 [99 S.Ct. 114, 58 L.Ed.2d 129] (1978). However, the award to Remington of reasonable expenses and attorney's fees is insufficient to negate the consequences of N.V. Philips' refusal to comply with discovery.

An order designating certain facts as established is useful when the discovery failure relates to discrete factual claims of the parties. *E.g., Evanson v. Union Oil Co.,* 85 F.R.D. 274, 278 (D.Minn.1979), *appeal dismissed,* 619 F.2d 72 (8th Cir.), *cert. denied,* 449 U.S. 832 [101 S.Ct. 102, 66 L.Ed.2d 38] (1980). Where, however, a party fails to provide any discovery, there are no discrete facts which can appropriately be established other than the totality of the factual allegations of the complaint. Moreover, where there are conspiracy allegations, it would be unreasonable to order a jury to take as established certain facts with regard to one alleged co-conspirator and not with regard to the others.[14] For example, it would clearly be prejudicial to NAPC to order a jury to take as established as to N.V. Philips that N.V. Philips conspired with NAPC, yet require the jury to determine whether NAPC conspired with N.V. Philips. Therefore, an order designating facts as established is not an appropriate sanction in this case.

An order precluding N.V. Philips from supporting or opposing designated issues suffers from similar infirmities. Since N.V. Philips failed to provide any discovery, it should logically be precluded on all issues, which would constitute a *de facto* default. Precluding N.V. Philips on only a single or few issues would be both arbitrary in terms of selection of issues and insufficient to negate the consequences of N.V. Philips' actions. Issue preclusion is therefore also not a practical solution.

---

**13.** Although under certain circumstances an American subsidiary, such as NAPC, may be ordered to produce documents controlled by its foreign parent, *see Uranium Antitrust Litigation,* 480 F.Supp. at 1152–53, and presumably could also be sanctioned for failure to comply, the record is insufficient to justify such action against NAPC.

**14.** Remington claimed this case to a jury on March 8, 1982.

The striking of N.V. Philips' answer and affirmative defenses would, as in general issue preclusion, constitute a *de facto* default. Merely striking the affirmative defenses would not negate the consequences of N.V. Philips' actions, since Remington would still be denied the documentary evidence, if it exists, necessary to prove the allegations of its complaint.

A contempt order in the form of a continuing fine for noncompliance could be directed solely at N.V. Philips. However, contempt is not appropriate under the circumstances. Although N.V. Philips has failed to demonstrate that it acted in good faith in its refusal to provide discovery as a result of Article 39, Article 39 is nevertheless an existing statute in N.V. Philips' home jurisdiction. By doing business in both the United States and the Netherlands, N.V. Philips has subjected itself to the conflicting requirements of two sovereigns. *See, e.g., First Nat. City Bank v. I.R.S.*, 271 F.2d 616, 620 (2d Cir.1959). So long as N.V. Philips is not allowed to take advantage of its failure to provide discovery, it is for N.V. Philips to decide which course to take to resolve the conflict. Therefore, contempt is not recommended as an appropriate sanction.

In addition to the specific sanctions analyzed above, several combinations and permutations of those sanctions have been considered and rejected for failing to meet the criteria listed *supra* at 28–29. The sanction remaining for consideration is a default against N.V. Philips. It is indisputable that a default judgment is "a drastic remed[y], and should be applied only in extreme circumstances." *Independent Prod. Co. v. Loew's, Inc.*, 283 F.2d 730, 733 (2d Cir.1960). Moreover, default judgments are properly disfavored since they deny a party a decision on the merits and raise due process considerations. *Wilson v. Volkswagen of America, Inc.*, 561 F.2d at 503–04; *General Atomic Co. v. Exxon Nuclear Co.*, 90 F.R.D. at 307. Nevertheless, harsh sanctions such as default can be appropriate responses to bad faith failures to provide discovery because of the important specific and general deterrence functions of such sanctions. *See National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643 [96 S.Ct. 2778, 2781, 49 L.Ed.2d 747] (1976); *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir.1979).

Under the circumstances presented in this case, a default is the only sanction which negates the consequences of N.V. Philips' actions, while not affecting the rights of innocent parties such as NAPC and Schick. There is no less drastic sanction which would accomplish these aims. Nevertheless, in order to provide N.V. Philips with a final opportunity to comply with the Court's discovery order, the Special Master recommends that a default judgment be entered against N.V. Philips, to be followed by a hearing in damages pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, unless N.V. Philips within 60 days of the Court's adoption of this ruling affirms to the Court its intention to comply with the discovery order.

## CONCLUSION

The Special Master recommends that a default judgment be entered against N.V. Philips unless it affirms to the Court its intention to comply with this Court's discovery order, dated January 24, 1983, within 60 days of the Court's adoption of this recommended ruling. The Special Master further recommends that N.V. Philips be ordered to pay Remington its reasonable expenses, including attorney's fees, incurred in connection with this motion.

Dated at New Haven, Connecticut, this 28 day of June, 1984.

/s/ Shaun S. Sullivan
Shaun S. Sullivan
Special Master